919 A.2d 90

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JAYSON
S. WILLIAMS, DEFENDANT–RESPONDENT.

Argued October 30, 2006—Decided April 11, 2007.

*Charles Ouslander,* Assistant Prosecutor, argued the cause for appellant (*Jeffrey Patrick Barnes,* Hunterdon County Prosecutor, attorney).

*Joseph A. Hayden, Jr.,* argued the cause for respondent (*Walder, Hayden & Brogan and Blank Rome,* attorneys; *Mr. Hayden and William R. Martin,* a member of the District of Columbia bar, of counsel; *Mr. Hayden, Mr. Martin, Shawn M. Wright,* a member of the District of Columbia bar, and *Christopher D. Adams,* on the briefs).

*Catherine A. Foddai,* Assistant Bergen County Prosecutor, argued the cause for amicus curiae County Prosecutors' Association (*John L. Molinelli,* Bergen County Prosecutor, President, attorney).

*Lawrence S. Lustberg* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Mr. Lustberg and Claudia Van Wyk,* on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

In connection with the February 2002 shooting death of Costas "Gus" Christofi, defendant Jayson Williams was charged with aggravated manslaughter, *N.J.S.A.* 2C:11–4(a)(1) (count one); reckless manslaughter, *N.J.S.A.* 2C:11–4(b)(1) (count two); possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a) (count three); aggravated assault by knowingly pointing a firearm at or in the direction of another, *N.J.S.A.* 2C:12–1(b)(4) (count four); hindering apprehension, *N.J.S.A.* 2C:29–3(b) (count five); tampering with a witness, *N.J.S.A.* 2C:28–5(a) (count six); tampering with evidence, *N.J.S.A.* 2C:28–6(1) (count seven); and fabricating physical evidence, *N.J.S.A.* 2C:28–6(2) (count eight).[1] After a lengthy trial, defendant was convicted on all counts concerning his post-shooting conduct (counts five through eight). The jury acquitted defendant of aggravated manslaughter, possession of a weapon for an unlawful purpose, and aggravated assault by knowingly pointing a firearm at or in the direction of another, but could not reach a verdict on reckless manslaughter. The court therefore accepted the jury's verdict on all of the counts except for reckless manslaughter and declared a mistrial as to that count.

Facing retrial on the reckless manslaughter charge, defendant filed a motion to exclude evidence of his conduct immediately after the shooting.[2] Defendant asserted that his post-shooting conduct is irrelevant to whether he acted recklessly at the time of the shooting, and that the evidence is unduly prejudicial. The State argued that, notwithstanding that the crime involves a reckless

---

[1] The parties and the courts below have referred to the first four charges as the "shooting counts" and the last four charges as the "post-shooting counts." We note that during the first trial defendant moved twice for a separate trial on the post-shooting charges. The trial court denied both severance motions.

[2] At the same time, defendant also moved to dismiss the reckless manslaughter charge on double jeopardy grounds, and the State moved to admit evidence of two unrelated shooting incidents in which defendant had been involved prior to the Christofi shooting. The trial court denied both motions and, on leave granted, the Appellate Division affirmed.

*mens rea* element, the evidence is relevant as demonstrative of a consciousness of guilt that is probative of defendant's state of mind during the shooting incident. The State also disputed that the evidence would cause undue prejudice.

The trial court held the evidence to be inadmissible. Its determination was grounded on the conclusion that post-crime evidence of consciousness of guilt is not relevant to demonstrate recklessness. Moreover, the court found that introduction of the post-shooting-conduct evidence would be unduly prejudicial to defendant in the retrial, notwithstanding the court's contrary conclusion at the first trial when it declined to sever the post-shooting counts from the shooting counts. In an unpublished opinion, the Appellate Division affirmed.[3]

We granted the State leave to appeal, 187 *N.J.* 487, 901 *A.*2d 951 (2006), and now, we reverse.

## I.

### A.

For context, we recount briefly the circumstances surrounding Christofi's shooting as presented during the first trial. The events transpired during the evening of February 13, 2002, when defendant, his long-time friend Kent Culuko, and several others attended a Harlem Globetrotters basketball game held at Lehigh University. During halftime, defendant invited the Globetrotters players to join him for dinner. Four members of the team accepted—Curly "Boo" Johnson, Leonard Benoit Benjamin, Christopher Morris, and Paul Gaffney. Defendant arranged for the players to be picked up at their hotel and driven to the agreed-

---

[3] Initially, the Appellate Division denied the State's motion for interlocutory review. However, we granted leave to appeal and summarily remanded to the Appellate Division for reconsideration on the merits. *State v. Williams,* 183 *N.J.* 290, 873 *A.*2d 500 (2005).

upon restaurant by a hired van. The driver of that van was Gus Christofi.

The engagement had an inauspicious start for Christofi. During dinner, while defendant and his guests ate and drank, Christofi, who was waiting in the restaurant, was subjected to loud embarrassing remarks by defendant questioning Christofi's right to be present in the restaurant. Defendant ultimately said he was joking, but only at the end of the humiliating experience.

The group left the restaurant at approximately 1:00 a.m. and traveled to defendant's home. After a tour of defendant's property, the Globetrotters players, Christofi, and others entered the house and eventually congregated in a study attached to defendant's bedroom. At a certain point, defendant, Benjamin, Morris, Gaffney, and Christofi were all in defendant's bedroom. Culuko stood in the entranceway between the study and the bedroom, and Johnson remained in the study. While in his bedroom, defendant retrieved a Browning Citori shotgun that was kept in a gun cabinet. As defendant wielded the shotgun in Christofi's direction, the weapon discharged. The circumstances of the shotgun's discharge will be the focus of the retrial; however, we note at this time that there was testimony that defendant uttered a curse at Christofi moments before the shot was fired. The shotgun blast struck Christofi in the chest, killing him.

Culuko, Benjamin, and Morris witnessed the fatal shot. Gaffney and Johnson did not see the shooting, but they did observe defendant's conduct immediately following the shooting. All five testified for the State during the first trial. Their testimony established that defendant took several steps immediately following the shooting to conceal his involvement in Christofi's death. According to their collective testimony, after Christofi was struck by the shotgun blast defendant dropped to his knees and exclaimed, "Oh my God, what just happened," "Sh*t," and "I f**ked up my life." As Christofi lay bleeding and gasping for air, Gaffney and Culuko attempted to help him by checking for a pulse. Defendant, on the other hand, tended to his gun, wiping off

the weapon with a cloth to remove his fingerprints. Holding the shotgun in one hand, defendant moved it into Christofi's hand, pressing Christofi's fingers and palm on the weapon. Defendant also destroyed evidence of Christofi's blood on himself, including changing his clothes and giving the ones he had been wearing to Culuko to discard. The witnesses testified that defendant instructed them to lie to the police by reporting that Christofi committed suicide. When the police arrived, defendant denied involvement in the shooting.

It is that post-shooting evidence that defendant moved to exclude from the retrial.

## B.

As noted, defendant sought to sever the post-shooting counts from the shooting counts in his first trial.[4] He argued that his cover-up conduct had no relevance to the shooting and did not bear on whether he shot Christofi recklessly—the *mens rea* required for counts one and two of the indictment. Rather, defendant asserted that the material issue at trial would be whether the shooting was the result of an accident or reckless behavior. As to that, defendant argued, the cover-up constitutes an unrelated and separate occurrence that does not illuminate his state of mind during the earlier events. As for count four (aggravated assault by knowingly pointing a gun at or in the direction of another), defendant conceded that the evidence was not unrelated to the intent element applicable to that offense. Instead, he argued that the prejudicial effect of the evidence outweighed its probative value.

The trial court denied the motion to sever, noting that the indictment included at least one specific intent crime, that judicial

---

[4] Defendant moved twice to sever the counts because there was a superseding indictment that added the count of possession of a weapon for an unlawful purpose. His arguments in favor of both severance motions were essentially the same.

economy favored trying the counts together, that the State could choose not to accept defendant's offer to stipulate on his identification as the shooter thereby permitting the introduction of relevant evidence on that issue at trial, and that the post-crime conduct constituted evidence of consciousness of guilt. In ruling on the second severance motion, the court again noted that the post-shooting conduct "would also be admissible at [a] separate trial in demonstrating consciousness of guilt, state of mind."

Accordingly, the court admitted the evidence with a limiting instruction. The trial resulted in defendant's acquittal on the aggravated manslaughter charge (count one) and two other shooting-related charges (counts three and four). One shooting charge was unresolved—the reckless manslaughter charge.

Defendant again sought to bar evidence of the cover-up conduct, this time from the State's re-prosecution of the remaining reckless manslaughter charge. He also sought to bar evidence of two prior gun-discharge incidents in which he had been involved.[5] The trial court granted the applications and, pursuant to a *Rule* 404(b) analysis, barred the evidence defendant sought to exclude. The State filed an interlocutory appeal and the Appellate Division affirmed, also employing a *Rule* 404(b) analysis. Although we did not grant leave to appeal from the panel's affirmance of the exclusion of defendant's prior gun-discharge incidents, we did agree to review the exclusion of defendant's cover-up conduct for which he has now been convicted. The admissibility of that other-

---

[5] As the Appellate Division described them,

> [t]he first incident occurred on January 15, 1994, at 2:00 a.m. and involved the discharge of a gun at the Meadowlands. The prosecutor asserted that: "the defendant admitted that he was showing this pistol to a friend and that the pistol accidentally fired, hitting the hubcap of the security vehicle." The second incident occurred in early August 2001, and involved defendant's friend, Dwayne Schnitzius, who was living at defendant's home. Schnitzius and defendant entered into a bet requiring Schnitzius to drag defendant's rottweiler outside the home, approximately twenty feet away. When Schnitzius won the bet, defendant returned with a shotgun which he used to kill his dog and threaten Schnitzius.

crimes evidence is governed by *Evidence Rule* 404(b), as the trial court and the Appellate Division correctly understood.

## II.

*Evidence Rule* 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

In *State v. Cofield*, 127 *N.J.* 328, 338, 605 *A*.2d 230 (1992), this Court framed a four-pronged test to determine whether to admit other-crimes evidence for a permitted purpose under *N.J.R.E.* 404(b). The *Cofield* test requires that:

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[*Cofield, supra,* 127 *N.J.* at 338, 605 *A*.2d 230 (citing Abraham P. Ordover, *Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), And 609(a),* 38 *Emory L.J.* 135, 160 (1989)).]

In this matter, the State seeks to admit evidence of defendant's post-shooting cover-up conduct, for which he has been convicted, for a permitted purpose under the *Rule*—intent. Defendant's state of mind at the time Christofi was shot is the material issue in dispute in the retrial. Therefore, in applying the test for admission of defendant's other-crimes conduct under *Rule* 404(b), prong one of *Cofield* requires examination of the evidence for its relevance to the issue in dispute.

## III.

### A.

Relevant evidence is defined as any evidence that has "a tendency in reason to prove or disprove any fact of consequence to

the determination of the action." *N.J.R.E.* 401; *see also State v. Deatore,* 70 *N.J.* 100, 116, 358 *A.*2d 163 (1976) (stating that test, which "favors admissibility," nonetheless must include evaluation of evidence's probative value in respect of point in issue). In relevance determinations, the analysis focuses on "the logical connection between the proffered evidence and a fact in issue." *Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 15, 860 *A.*2d 435 (2004) (quoting *State v. Hutchins,* 241 *N.J.Super.* 353, 358, 575 *A.*2d 35 (App.Div.1990)). The standard for the requisite connection is generous: if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied. *State v. Davis,* 96 *N.J.* 611, 619, 477 *A.*2d 308 (1984).[6]

Here the State bears the burden of proving that defendant recklessly caused the death of Gus Christofi. *N.J.S.A.* 2C:11–4(b)(1). The Code defines the culpability required for recklessness:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. [*N.J.S.A.* 2C:2–2(b)(3).]

The element of criminal recklessness differs from knowing culpability, *N.J.S.A.* 2C:2–2(b)(2), in that the latter requires a greater degree of certainty that a particular result will occur. *See State v. Simon,* 161 *N.J.* 416, 464, 737 *A.*2d 1 (1999) ("Recklessness can generally be distinguished from purposely and knowingly

---

[6] We note that discussions about the relevance of evidence are infused with meaning based on evidence type. *See McCormick on Evidence* § 185 (Cleary ed., 3d ed.1984) (commenting that direct evidence "can never be irrelevant" if offered to establish fact required to be proved; in contrast, there exists wide range of relevancy for circumstantial evidence, which is determined based on whether evidence "justif[ies] any reasonable inference as to the fact in question"); *State v. Allison,* 208 *N.J.Super.* 9, 17, 504 *A.*2d 1184 (App.Div.1985) (noting same).

based on the degree of certainty involved. Purposely and know-ingly states of mind involve near certainty, while recklessness involves an awareness of a risk that is of a probability rather than certainty."); *State v. Rose*, 112 *N.J.* 454, 562, 548 *A.*2d 1058 (1988) (recognizing same). Nevertheless, even when recklessness is the *mens rea* element of the crime charged, a defendant's knowledge or awareness is material to the determination of culpability. *State v. Sewell*, 127 *N.J.* 133, 148–49, 603 *A.*2d 21 (1992) (noting that "recklessness resembles knowledge in that both involve a state of awareness"). As the 1971 Commentary to the Code explains,

[a]s the Code uses the term, recklessness involves conscious risk creation. It resembles acting knowingly in that a state of awareness is involved but the awareness is of risk that is of probability rather than certainty; the matter is contingent from the actor's point of view. Whether the risk relates to the nature of the actor's conduct or to the existence of the requisite attendant circumstances or to the result that may ensue is immaterial; the concept is the same.

[II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission*, commentary to § 2C:2–2, at 41–42 (1971).]

Accordingly, when the State alleges criminal recklessness, it must demonstrate through legally competent proofs that defendant had knowledge or awareness of, and then consciously disregarded, "a substantial and unjustifiable risk." *N.J.S.A.* 2C:2–2(b)(3).

## B.

 It is well known that mental state is not conducive to demonstration through direct evidence. *See Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 254, 773 *A.*2d 1121 (2001) (observing that "one's state of mind is seldom capable of direct proof"); *State v. Rowe*, 838 *S.W.*2d 103, 111 (Mo.Ct.App.1992) ("Mental state is rarely capable of direct proof."). In criminal prosecutions, proof of a defendant's mental state often must be "inferred from the circumstances and the jury must make its determination by both the act and by the surrounding circumstances." *Rowe, supra*, 838 *S.W.*2d at 111. The key to circumstantial evidence generally, and as applied to state-of-mind questions specifically, is whether it bears a logical connection to the disputed fact. *See, e.g., State v. G.V.*, 162 *N.J.* 252, 263–64, 744 *A.*2d 137 (2000) (applying logical

inference test in approval of trial court's admission of circumstantial evidence about victim-accuser's state of mind in respect of her motivation for accusing father of molestation); *see also State v. Koskovich*, 168 *N.J.* 448, 480–82, 776 *A.*2d 144 (2001) (approving admission of evidence of defendant's personal belongings as circumstantially relevant and admissible on defendant's state of mind, motive, and intent consistent with prosecution's theory of case).

When an individual's state of mind is at issue, a greater breadth of evidence is allowed. We admit circumstantial evidence that has a tendency "to shed light on [defendant's mental state] or which tend[s] fairly to explain [a defendant's] actions," notwithstanding that the evidence relates to conduct that occurred before the offense. *State v. Rogers*, 19 *N.J.* 218, 228, 116 *A.*2d 37 (1955). Similarly, conduct that occurs after the charged offense circumstantially may support inferences about a defendant's state of mind.

We specifically have recognized the relevance of post-crime conduct to a defendant's mental state when the conduct demonstrates consciousness of guilt. In *State v. Rechtschaffer*, 70 *N.J.* 395, 413–15, 360 *A.*2d 362 (1976), evidence of the defendant's post-crime threats made against a witness were admitted because they demonstrated a consciousness of guilt, which could support an inference that was inconsistent with innocence or could tend to establish the defendant's intent. We also have recognized flight as being a type of post-crime conduct that can demonstrate consciousness of guilt. *State v. Long*, 119 *N.J.* 439, 499, 575 *A.*2d 435 (1990) ("Flight of an accused is admissible as evidence of consciousness of guilt . . . ."); *see generally* 2 *Wigmore on Evidence* § 276 (Chadbourn rev. 1979) ("It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself. . . ."). Thus, evidence of flight occurring after the commission of an offense has been held

probative of guilt and admissible. *See State v. Mann,* 132 *N.J.* 410, 418–19, 625 *A.*2d 1102 (1993) (explaining that evidence of flight after charged offense is admissible when probative of guilt).

Admittedly, *Rechtschaffer* and *Long* arose in the context of specific intent crimes. However, our discussion of the worth of consciousness of guilt evidence did not suggest that the evidence's relevance would become nonexistent when a lesser criminal mental state was involved. Rather, we acknowledged generally that a defendant's post-crime conduct evidencing a guilty conscience provided a sound basis from which a jury logically could infer that a defendant was acting consistent with an admission of guilt or that the conduct was illuminating on a defendant's earlier state of mind. *See Rechtschaffer, supra,* 70 *N.J.* at 413–15, 360 *A.*2d 362.

As aptly noted by another court, when determining an accused's mental state, generally, it is helpful to the fact-finder to be able to draw inferences from a totality of the events, including the "final link[s] in [a] chain of evidence which [is] admissible as indicative of a consciousness of guilt." *People v. Maldonado,* 3 *Ill.App.*3d 216, 278 *N.E.*2d 225, 230 (1971) (addressing, in context of involuntary manslaughter charge, evidence offered to demonstrate defendant's reckless *mens rea*). In *Maldonado,* the defendant-driver of the vehicle involved in a fatal accident that killed two female pedestrians, convinced a passenger to confess to being the driver while defendant fled the police station. Maldonado's consciousness of guilt evidence was not viewed as legally irrelevant simply because recklessness was the *mens rea* of the crime charged. *Ibid.; see also Rowe, supra,* 838 *S.W.*2d at 111 (stating that, in context of involuntary manslaughter charge involving recklessness, accused's post-crime statements demonstrated disregard for life and, therefore, constituted relevant evidence for jury's consideration of state of mind).

We have never held that evidence of consciousness of guilt loses legal relevance when less than a specific intent mental state is at issue. Indeed, actions involving death by auto, *N.J.S.A.* 2C:11–5 (requiring reckless state of mind), can include evidence of a

person's flight from the scene as relevant evidence of consciousness of liability for the accident. The logical connection between post-crime hit-and-run conduct and the accident is underscored by the penalization of flight from the scene of an accident involving personal injuries. *N.J.S.A.* 39:4–129; *see also State v. Gill*, 47 *N.J.* 441, 443–44, 221 *A*.2d 521 (1966) (describing purpose of statute as prohibiting hit-and-run driver from evading responsibility by escape or departure before identification is known). Evidence of the failure to stop, as required by law, "permits an inference of consciousness of lack of care and of liability for the occurrence." *Jones v. Strelecki*, 49 *N.J.* 513, 519, 231 *A*.2d 558 (1967) (recognizing in automobile negligence death action that evidence of flight from scene is relevant to mental state as well as to liability); *see also Tiger v. Am. Legion Post No. 43*, 125 *N.J.Super.* 361, 367, 311 *A*.2d 179 (App.Div.1973) (same). Such evidence belongs in front of the jury; objections thereto should be evaluated by the jury as part of its weighing of the evidence. *See State v. Brown*, 118 *N.J.* 595, 615, 573 *A*.2d 886 (1990).

Tellingly, numerous other courts that have addressed relevance challenges to consciousness of guilt evidence in recklessness settings have found post-crime consciousness of guilt evidence to be relevant and admissible. Courts have admitted evidence of flight as probative of consciousness of guilt in prosecutions for vehicular homicide, a crime requiring proof of a reckless state of mind. *See, e.g., Maldonado, supra*, 278 *N.E.*2d at 230 (admitting evidence in involuntary manslaughter case involving automobile); *State v. Gibbs*, No. 01C01–9611–CC–00464, 1998 *WL* 85288, at **4–5, 1998 *Tenn.Crim.App. LEXIS* 214, at **11–12 (Tenn.Crim.App. Feb. 20, 1998)[7] (admitting flight evidence for consciousness of guilt because jury could conclude from flight "that the defendant was well aware that the [vehicular-homicide] victim's fatal injuries were not the result of mere accident but were caused by the defendant's criminal recklessness"). Post-crime evidence of a defendant's

---

[7] *See Tenn. S.Ct. R.* 4(H)(1) (permitting persuasive use of unpublished opinion that has not been designated as "not for publication").

attempts at avoiding detection also has been admitted as consciousness of guilt evidence in various non-specific intent crimes. *See, e.g., People v. Reynolds,* 269 *A.D.*2d 735, 704 *N.Y.S.*2d 398, 399 (2000) (allowing evidence of defendant's flight as demonstrating consciousness of guilt of manslaughter). In *Hubbard v. State,* 187 *So.*2d 885, 886 (Miss.1966), for example, although the defendant sought to preclude post-crime evidence that he pushed his automobile into a lake, that evidence of concealment and tampering with evidence was admitted as consciousness of guilt evidence in a prosecution for manslaughter.

Importantly, jurisdictions admitting post-crime conduct evidencing consciousness of guilt in various mental-state settings recognize that the evidence could support a jury finding of the requisite level of the defendant's awareness that his or her actions were likely to cause harm. *See State v. Worrick,* 139 *N.M.* 247, 131 *P.*3d 97, 101 (App.2006) (telling of lies at scene of accident, as well as later inconsistent statements, deemed admissible as consciousness of guilt relevant to issue of defendant's state of mind in reckless crime); *Allen v. State,* 39 *Md.App.* 686, 389 *A.*2d 909, 921 (1978) (noting in boating death case that post-impact conduct of accused may be relevant on issue of gross negligence); *see also Commonwealth v. Reynolds,* 67 *Mass.App.Ct.* 215, 852 *N.E.*2d 1124, 1129–30 (2006) (permitting evidence of defendant's intentionally false statements in aftermath of accident because jury may be able to infer consciousness of guilt from post-crime deceptions); *State v. Hermanson,* 555 *N.W.*2d 410 (Wis.Ct.App.1996) (ordering affirmance of trial court's admission of post-crime evidence of tampering with crime scene in prosecution for reckless homicide).

The aforementioned cases' rationales reflect the broad sweep given to "relevance" in respect of circumstantial evidence probative on a disputed issue involving state of mind. In sum, post-crime consciousness of guilt evidence can support a logical connection to a desired inference about mental state in specific and non-specific intent crimes. Post-crime consciousness of guilt evidence can illuminate a defendant's state of mind in a crime

involving recklessness, and we agree generally with the decisions that have allowed the use of such evidence for that purpose. Contrary to the trial court's misapprehension of the evidence's relevance, we hold that post-crime consciousness of guilt evidence is relevant to state of mind disputes arising in criminal prosecutions for reckless conduct.

## C.

■ In this matter, defendant's post-shooting conduct can support inferences having a logical tendency to prove that defendant was aware that the victim's fatal injuries were not the product of an accident, but were caused by defendant's criminal recklessness, as is the theory of the State's case.

The prosecution intends to offer multiple acts indicating consciousness of guilt. The State's proffer is classic consciousness of guilt evidence in the form of lying to police, inducing others to lie, and tampering with evidence—not just to destroy it but to make it look as if only the victim handled the gun. The effort to make it appear that the victim shot himself strongly suggests that defendant desperately wanted this incident to appear closer to an accident or suicide. The State may urge the jury to consider that defendant's cover-up attempts were equivalent to an admission that he had committed a criminal, rather than an accidental, act. Further, the evidence could support the inference that defendant knew that he had to avoid any judging of the care he had taken in his own actions before the shotgun discharged. From that the jury could find a guilty conscience—that defendant was aware that moments earlier he engaged in the conscious disregard of risk that could make him criminally culpable.

We reject the argument that the evidence is too attenuated simply because the conduct occurred after the shot was fired. Defendant's conduct suggests an immediate awareness that the shooting of Christofi was more than a mere accident, and that his actions were reckless of the risk involved and wrongful. The evidence, therefore, could support a jury finding that defendant

had a "subjective awareness of the risk—an element essential to establish the underlying *mens rea* of recklessness." *People v. Roe,* 74 *N.Y.*2d 20, 544 *N.Y.S.*2d 297, 542 *N.E.*2d 610, 613 n. 7 (1989) (noting that post-shooting conduct can be relevant to subjective state of mind necessary for criminal recklessness).

Defendant's immediate post-shooting statements and actions are probative of the very issue that will dominate the retrial. That evidence cannot fairly be kept from the jury as if defendant's conduct that evening could, or should, be freeze-framed at the time of the shotgun's discharge. As noted earlier, numerous jurisdictions have acknowledged the relevance of post-crime consciousness of guilt evidence in factual disputes involving reckless or less specific state of mind issues, including our own. *See Jones, supra,* 49 *N.J.* at 519, 231 *A.*2d 558. Moreover, the relevance of such evidence is not limited to circumstances when a defendant's identity is debatable and, for example, the prosecution needs the evidence to debunk an alibi defense. Thus, defendant's concession that he was the shooter does not vitiate the post-shooting evidence's relevance to explaining defendant's earlier conduct and subjective state of mind.

In conclusion then, we reverse the trial court's relevance assessment that held, for purposes of *Rule* 404(b) admission, that defendant's cover-up conduct was legally irrelevant in the reprosecution of defendant for reckless manslaughter. Further, because of the age of this case and for purposes of judicial economy, we are reluctant to send this matter back for reexamination of the evidence in light of the other *Rule* 404(b) requirements. We believe that all parties would benefit from a final resolution of the admissibility of this evidence at this time. Accordingly, we turn to the remaining *Cofield* prongs.

## IV.

Having concluded that the evidence is relevant to a material issue in dispute—defendant's state of mind—*Cofield* prongs two and three state that the "other crimes" must be similar in kind

and reasonably close in time (prong two), and that the "other" crime will be demonstrated through clear and convincing evidence (prong three). As for the latter, all seemingly concede that the clear and convincing standard is not at issue here. It requires no further discussion. Similarly, prong two does not require much attention.

The second *Cofield* prong, requiring that the "other acts" be similar in kind and reasonably close in time, was pertinent to the facts presented in that case. In *Cofield, supra,* the State sought to introduce evidence establishing the defendant's constructive possession of drugs during an illegal-drug street encounter that occurred subsequent to the drug incident that was the subject of the prosecution. 127 *N.J.* at 330, 605 *A.*2d 230. The State sought to admit that similar and close-in-time other-crimes evidence as relevant to prove the defendant's possession of drugs ·in the charged offense, an element that was hotly contested. *Id.* at 339, 605 *A.*2d 230. The test that the Court ultimately fashioned included an aspect that plainly addressed the specific drug evidence at issue in *Cofield.*

The requirement set forth as prong two of *Cofield,* however, is not one that can be found in the language of *Evidence Rule* 404(b). *Cofield's* second prong, therefore, need not receive universal application in *Rule* 404(b) disputes. Its usefulness as a requirement is limited to cases that replicate the circumstances in *Cofield.* In the instant analysis, application of prong two serves no beneficial purpose and, therefore, we disregard it as unnecessary.

## V.

The key issue in respect of this evidence is clearly the weighing of the evidence's prejudicial effect as against its probative value.[8]

---

[8] When initially evaluating the post-shooting cover-up conduct during defendant's first trial, the court determined that the prejudicial effect of the consciousness of guilt evidence did not "substantially outweigh" its probative value, which is *Rule* 403's test for admissibility. Acknowledging the prejudice that the

 *Rule* 404(b) reflects an overarching concern about predis-
position evidence. Nonetheless, the codified *Rule* accepts the
common-law evidentiary principle that permits use of other-crimes
evidence for certain proofs. *See State v. Fortin,* 162 *N.J.* 517, 529,
745 *A.*2d 509 (2000). To strike a balance between those two
interests, we adopted the multi-pronged *Cofield* standard out of
concern that the other-crimes evidence might be overused or be
confused as prohibited predisposition evidence. *Ibid.* (citing *Co-
field, supra,* 127 *N.J.* at 338, 605 *A.*2d 230). Thus, for example,
when other-crimes evidence is proffered for the permitted purpose
of identity, where such evidence is particularly at risk of being
confused as predisposition evidence, we require special emphasis
on the similarity of the crime to avoid the predisposition prejudice
that the *Rule* abhors. *See id.* at 530, 745 *A.*2d 509.

 Here, the other-crimes evidence occurs at the end of a
chain of events and is being employed for the limited and permit-
ted purpose of shedding light on a defendant's state of mind
during the immediately preceding criminal event.[9] The conscious-

---

evidence nonetheless generated, the trial court originally believed that the
prejudicial effect of the post-shooting conduct could be kept in check by means
of a limiting instruction. The State argues that the feared prejudice asserted by
defendant did not materialize in that the jury acquitted defendant of the more
serious manslaughter charge as well as other charges involving greater culpabili-
ty (aggravated assault) in spite of having heard all of the post-shooting-conduct
evidence. We do not rush to that conclusion, however, because as a reviewing
court we will never truly know why a jury determines to convict on some, and
acquit on other, charges. *See State v. Banko,* 182 *N.J.* 44, 53–54, 861 *A.*2d 110
(2004) (acknowledging that inconsistent jury verdicts are accepted, in part
because "[w]e do not speculate why a jury acquits").

[9] Indeed, as our earlier analysis detailed, we find that *Cofield's* "similar in kind
and reasonably close in time" prong does not have any applicability in this
setting. There is no risk that a jury hearing this other-crimes evidence will
confuse it as exhibiting defendant's predisposition to commit a certain type of
like crime. Thus, there is a significant difference in respect of the risk of
predisposition confusion between this cover-up evidence, occurring at the tail
end of this unfortunate incident and being introduced to illuminate defendant's
state of mind, and the earlier shooting incidents at the Meadowlands and
involving defendant's dog, that properly were excluded under *Rule* 404(b). The

ness of guilt evidence's probative value on state of mind is weighty in that setting, notwithstanding that the evidence carries with it a prejudicial effect.

To be sure, defendant's efforts to cover-up his involvement in the discharge of his shotgun in his bedroom that evening in February 2002 cast him in an unfavorable light. Consciousness of guilt evidence, however, is not neutral to begin with. Indeed, it is difficult to conjure a description of evidence that a jury might find to demonstrate consciousness of guilt that did not have a prejudicial effect. Here defendant's cover-up effort was substantial. However, a jury could find that the conduct provides substantial evidence of defendant's immediate awareness that his actions were wrongful, and created an unjustifiable risk of harm to his victim. The evidence's use for state of mind purposes is permitted under *Rule* 404(b) and any prejudicial concern about predisposition is outweighed by the probative value of the evidence. The fact that the evidence casts defendant in an unflattering position is not reason enough to exclude it.

In these circumstances we conclude that this relevant information should not be kept from the jury. Defendant may provide the jury with alternative explanations for his post-shooting acts. The jury may well reject the State's view of the evidence. The jurors may believe instead that defendant's cover-up efforts were due to a desire to avoid negative publicity that could hurt his career in professional sports or sports-broadcasting, or to avoid being at risk of civil liability, or any other reason he may advance. That determination, however, is for the jury.

We find that the evidence's probative value is not outweighed by undue prejudice. The evidence of defendant's post-shooting words and conduct is admissible under *Rule* 404(b) for purposes of assessing defendant's state of mind, which will be the disputed issue at the retrial. In an instruction, the court must focus the

---

latter similar-in-kind bad acts run a high risk of suggesting to the jury a certain predisposition in defendant.

jury's attention on the limited use to which this evidence may be put. Specifically, the court must instruct the jury that the evidence may be used only to assess defendant's mental state. The court also must carefully inform the jury of the prohibited purposes of the evidence.

## VI.

In conclusion, we hold that the consciousness of guilt evidence is relevant to defendant's mental state at the time of the shooting for which he is charged with reckless manslaughter. We reverse the judgment of the trial court, affirmed by the Appellate Division, that found that the evidence of defendant's post-shooting conduct was legally irrelevant and that the evidence's prejudicial effect required its preclusion under *Evidence Rule* 404(b). We hold that at trial on our remand, a strong limiting instruction should be administered by the trial court informing the jury that it should not draw any inference of consciousness of guilt by defendant from his post-crime conduct unless it believes that defendant acted to cover up a crime.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

Chief Justice ZAZZALI dissenting.

The majority presents a comprehensive and viscerally appealing rationale supporting the introduction of defendant Jayson Williams' post-shooting criminal conduct. Because of the proposed evidence's lack of relevancy, the substantial prejudice that the majority's ruling will visit on this defendant, and the deference owed to the trial court's evidentiary determinations, I respectfully dissent.

The majority concludes that the evidence is admissible under *N.J.R.E.* 404(b) because it satisfies the "other crimes" admissibility test this Court set forth in *State v. Cofield,* 127 *N.J.* 328, 605 *A.*2d 230 (1992). Specifically, the majority finds that defendant's

post-shooting criminal conduct is "relevant" because it "can support inferences having a logical tendency to prove that defendant was aware that the victim's fatal injuries were not the product of an accident, but were caused by defendant's criminal recklessness." *Ante* at 129, 919 *A*.2d at 99. Further, the majority concludes that the evidence's "probative value is not outweighed by undue prejudice." *Ante* at 133, 919 *A*.2d at 101.

I instead would affirm the trial court's exclusion of the post-shooting conduct under *N.J.R.E.* 404(b) because the evidence in question is not "relevant to a material issue," *Cofield, supra,* 127 *N.J.* at 338, 605 *A*.2d 230, and, more important, because the prejudice of such evidence is overwhelming. Indeed, not only is the "probative value ... outweighed by its apparent prejudice," *ibid.,* I believe that the prejudice eclipses any relevance. In any event, I would afford appropriate deference to the trial court's evidentiary ruling under the applicable abuse of discretion standard.

## I.

Preliminarily, I consider the post-shooting evidence in question that of other crimes and therefore subject to the strictures of *N.J.R.E.* 404(b). Because *N.J.R.E.* 404(b) is a character rule premised on exclusion, *State v. Reddish,* 181 *N.J.* 553, 609, 859 *A*.2d 1173 (2004), we begin with the principle that other-crimes evidence generally should be kept from the jury to prevent the factfinder from deciding the *mens rea* element of a crime based on presumptions about defendant's character. As a result, other-crimes evidence "is handled with particular caution" and "necessitates a more searching inquiry" than other prejudice analyses. *Id.* at 608, 859 *A*.2d 1173. Other-crimes evidence is recognized as having " 'a unique tendency to turn a jury against the defendant,' " *ibid.* (quoting *State v. Stevens,* 115 *N.J.* 289, 302, 558 *A*.2d 833 (1989)), and "poses a distinct risk that it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself," *State v. G.S.,* 145 *N.J.* 460, 468, 678 *A*.2d

1092 (1996). Thus, "the primary focus of [*N.J.R.E.* 404(b) ] . . . is to view it as a rule of exclusion rather than a rule of inclusion." *State v. Darby*, 174 *N.J.* 509, 520, 809 *A.*2d 138 (2002) (quoting *State v. Marrero*, 148 *N.J.* 469, 482–83, 691 *A.*2d 293 (1997)) (alteration in original).

## II.

Other-crimes evidence under *N.J.R.E.* 404(b) must pass an established test for admissibility to "avoid [its] over-use." *Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230. As the majority observes, other-crimes evidence must satisfy a four-prong test to be admitted into evidence under *N.J.R.E.* 404(b):

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[*Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230.]

Because the *Cofield* prongs are in the conjunctive, the evidence is inadmissible if it fails any of the prongs.

The first prong of the *Cofield* test evaluates the evidence's relevance. *Ibid.* The relevancy of evidence denotes its "logical connection between the proffered evidence and a fact in issue." *Darby, supra,* 174 *N.J.* at 519, 809 *A.*2d 138 (quotation omitted). Here, the State seeks to introduce the post-shooting evidence to establish defendant's recklessness, namely, that defendant was aware, after the shooting, that he had "consciously disregard[ed] a substantial and unjustifiable risk." *N.J.S.A.* 2C:1–1(b)(3). Recklessness connotes "an awareness of a risk," *State v. Simon*, 161 *N.J.* 416, 464, 737 *A.*2d 1 (1999), and pre-incident awareness is material to the determination of culpability, *State v. Sewell*, 127 *N.J.* 133, 148–49, 603 *A.*2d 21 (1992). The State theorizes that defendant's attempted cover-up of the killing reveals that he knew he had "consciously disregard[ed] a substantial and unjustifiable risk." The State alleges that defendant's post-shooting conduct

implies that he knew he had committed a criminal, "reckless" homicide as opposed to a non-criminal, "accidental" killing.

In advance of defendant's pending retrial for reckless manslaughter, the trial court evaluated the evidence's relevancy as part of its *Cofield* analysis. During the hearing, the court noted that the post-shooting conduct had to be relevant to the jury's choice between recklessness and a criminally-blameless accident, the argument advanced by defendant. The trial court explained that it was "trying to probe with regard to consciousness . . . what the post[-]shooting conduct demonstrates." Recognizing that, from the beginning, defendant has argued that he "tragically caused the death of Mr. Christofi but did so accidentally," the court inquired whether defendant merely exhibited "consciousness of accidentally causing the death." The trial court concluded that defendant's post-shooting conduct was not relevant to the reckless manslaughter charge because "post-shooting conduct is really not probative of [defendant's] guilt or his consciousness of guilt as to reckless conduct."

The Appellate Division affirmed, noting that it was "unable to locate any reported decisions allowing 'consciousness of guilt' evidence when the requisite culpable mental state is less than 'knowing.' "[1] The panel concluded that the trial court "reasonably determined, in this case, that the confidence with which one could attribute the post-shooting conduct to a consciousness of guilt is so minimal as to require exclusion." *State v. Williams*, No. A-2724-04T5 2005 *WL* 3968822, *6 (App.Div. Apr. 21, 2006).

---

[1] The majority cites numerous out-of-state cases that hold that evidence of post-conduct flight or tampering is relevant to consciousness of guilt of reckless crimes. *See ante* at 127–30, 919 A.2d at 98–99. I am unconvinced by the rationale of those cases and, in any event, their holdings are not binding on this Court. The majority also cites this Court's holding in *Jones v. Strelecki*, 49 N.J. 513, 231 A.2d 558 (1967), to support the proposition that flight is relevant to mental state. However, that civil negligence case has no bearing on the criminal recklessness case now before the Court.

I agree with the courts below and find that defendant's post-shooting conduct is not relevant to whether there was criminal recklessness at the time of the shooting. Defendant's post-shooting acts are indicative only of his awareness that he just killed Christofi, not whether the act was reckless or accidental. Indeed, as the majority observes, defendant had much to lose from causing even an accidental death, including harming his public reputation as a television broadcaster and former professional basketball player, and exposing himself to potential civil liability. Thus, defendant's deplorable post-shooting conduct is at least as consistent with a recognition that he made a tragic and stupid mistake—but one that was an accident nonetheless—as it is with criminal recklessness. Because the post-shooting conduct is not relevant to determining defendant's "state of mind at the time Christofi was shot," *ante* at 122, 919 *A*.2d at 95, I find that the evidence fails the first prong of the *Cofield* test and is thus inadmissible.

### III.

Quite apart from my conclusion that evidence of defendant's post-shooting conduct is not relevant under the first *Cofield* prong, I also find that the evidence is inadmissible under the fourth *Cofield* prong—comparing the evidence's probative value to its apparent prejudice—because of its undue, and, I believe, extraordinary prejudicial effect.[2]

To begin, probative value "is the tendency of the evidence to establish the proposition that it is offered to prove." *State v. Wilson*, 135 *N.J.* 4, 13, 637 *A*.2d 1237 (1994). Prejudice, in the context of *N.J.R.E.* 404(b), arises from the "risk that the jury would conclude that defendant had a propensity to commit bad acts and, thus, [committed the crime]." *Reddish, supra,* 181 *N.J.* at 608, 859 *A*.2d 1173. Under *N.J.R.E.* 404(b), "the party seeking

---

[2] I do not need to address the second and third *Cofield* prongs here, except to note my general agreement with the majority that the second prong "need not receive universal application in *Rule* 404(b) disputes," *ante* at 131, 919 *A*.2d at 100.

to admit other-crimes evidence bears the burden of establishing that the probative value of the evidence is not outweighed by its apparent prejudice." *Id.* at 608–09, 859 *A.*2d 1173 (citing *State v. Long,* 173 *N.J.* 138, 162, 801 *A.*2d 221 (2002)). Further, because *N.J.R.E.* 404(b) simply requires that the prejudice "outweigh" the probative value, *Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230, we need only find that the scale tips slightly towards the evidence's apparent prejudice and away from its probative value to bar its admission.

Importantly, "[i]n weighing the probative worth of other-crime[s] evidence, a court should consider *not only its relevance but whether its proffered use in the case can adequately be served by other evidence." Stevens, supra,* 115 *N.J.* at 303, 558 *A.*2d 833 (emphasis added). Thus, when "more important, less prejudicial evidence exists to prove [the same point]," the probative value of other-crimes evidence diminishes. *State v. Jenkins,* 178 *N.J.* 347, 366, 840 *A.*2d 242 (2004); *accord Long, supra,* 173 *N.J.* at 164–65, 801 *A.*2d 221. At the first trial, the State offered myriad other evidence, through witnesses and experts, to prove defendant's recklessness. Defendant drank numerous alcoholic beverages earlier that evening and then sped home, driving erratically, under the influence of alcohol. Once home, defendant retrieved an already-loaded shotgun from his gun case. When defendant grabbed the shotgun, he swung left, facing Christofi, and pointed the gun at the victim. Then, after defendant unlatched the double-barrel, "break open" shotgun, exposed the breech, looked down at the barrels, and saw that the gun was loaded, he snapped the weapon together directly in front of the victim, with the muzzle six to thirty-six inches from the victim's chest. The gun immediately discharged, killing Christofi. Those events, none of which involve the post-shooting evidence at issue here, are highly probative of defendant's recklessness.

In comparison, defendant's conduct after the shooting—tampering with evidence, changing his clothing, and telling witnesses to lie to authorities—is significantly less probative of his pre-shooting

state of mind. That post-shooting conduct instead reveals defendant's post-shooting state of mind: his immediate shock at the gun's firing, his recognition that he had just killed Christofi, and his subsequent distress over his role as the triggerman. Accordingly, because "more important, less prejudicial evidence exists to prove [recklessness]," the probative value of the post-shooting evidence diminishes. *Jenkins, supra,* 178 *N.J.* at 366, 840 *A.*2d 242.[3]

In any event, the prejudice to defendant is substantial because the jury could wrongly rely on such evidence to prove that defendant knew he had committed reckless manslaughter as opposed to accidentally killed Christofi. In its own analysis of relevancy, the majority states that "[d]efendant's conduct suggests an immediate awareness that the shooting of Christofi was more than a mere accident, and that his actions were reckless of the risk involved and wrongful," which "could support a jury finding [of recklessness]." *Ante* at 129–30, 919 *A.*2d at 99. However, as both the dissent and the majority here recognize, defendant's conduct could also demonstrate concern for civil liability and damage to his reputation. *See supra* at 138, 919 *A.*2d at 104; *ante* at 133, 919 *A.*2d at 101. Because the jury will be called on to render judgment on one narrow criminal charge—for there are no other accusations of misconduct remaining—the jury has but one avenue to channel defendant's wrongful conduct, that is, reckless manslaughter, even though his post-shooting conduct may well find its genesis in other motivations. Importantly, the State "bears the burden of establishing that the probative value of the evidence is not outweighed by its apparent prejudice." *Reddish, supra,* 181 *N.J.* at 608–09, 859 *A.*2d 1173 (citation omitted). Yet, the majority effectively places the onus on defendant to defeat the prejudice of

---

[3] The majority identifies other, undisputed evidence that is probative of defendant's recklessness, *see ante* at 119, 919 *A.*2d at 93, and recognizes that the post-shooting conduct in question has "a prejudicial effect," *ante* at 133, 919 *A.*2d at 101. Those observations underscore the applicability of *Jenkins* in this case.

the evidence by "provid[ing] the jury with alternative explanations for his post-shooting acts," *ante* at 133, 919 *A.*2d at 101.

Prejudice also arises from the very real risk that the jury may conclude that defendant has a propensity to commit the crime merely because he subsequently committed other crimes and is thus the "type of person" who commits manslaughter. Even if it was appropriate for the lower court to admit evidence of the post-shooting conduct to show intent during the first trial, the admission of the evidence at the retrial of the lone reckless manslaughter charge is not. During the first trial, the evidence could arguably be probative of whether defendant possessed the higher level of intent associated with the other shooting-related charges—purposeful or knowing. Now, conversely, with only the reckless manslaughter charge remaining, the jury is not charged with finding a higher level of intent. Rather, the effect of the evidence is to prejudice defendant by tacitly indicating that he "acted in conformity with" his post-shooting conduct. By keeping this evidence from the jury, defendant would be protected from the jury's instinctive tendency to find convicted felons guilty of additional charged crimes.

The majority recognizes that the admission of the post-shooting evidence will have a "prejudicial effect," *ante* at 133, 919 *A.*2d at 101, but would rely on a limiting instruction to cure undue prejudice, *id.* at 134, 919 *A.*2d at 102 ("[The jury] should not draw any inference of consciousness of guilt ... unless it believes that defendant acted to cover up a crime."). In underscoring the importance of well-crafted limiting instructions, this Court recently observed in *State v. Blakney* that "other-crimes evidence may indelibly brand the defendant a bad person and blind the jury from a careful consideration of the elements of the charged offense." 189 *N.J.* 88, 93, 912 *A.*2d 140. A unanimous Court recognized that " 'the inherently prejudicial nature of such evidence casts doubt on a jury's ability to follow even the most precise limiting instruction.' " *Ibid.* (quoting *Stevens, supra,* 115 *N.J.* at 309, 558 *A.*2d 833). In light of *Blakney*, and recognizing

that "more important, less prejudicial evidence exists to prove [recklessness]," *Jenkins, supra,* 178 *N.J.* at 366, 840 *A.*2d 242, I cannot support the majority's reliance on a limiting instruction to curb the prejudicial effect of the post-shooting evidence and ensure the fair administration of justice.

In sum, the risk of prejudice inherent in the post-shooting conduct reflects the intended purpose of *N.J.R.E.* 404. That evidence does more than simply portray defendant in an "unfavorable light" or "unflattering position." *Ante* at 133, 919 *A.*2d at 106. In my view, its prejudice may well devastate the defense, notwithstanding limiting instructions. I therefore agree with the trial court, which has the "best feel" of the case, that the prejudice outweighs the evidence's probative value. I believe the prejudice is so severe that it greatly surpasses the *N.J.R.E.* 404(b) inadmissibility standard set forth in *Cofield.* Accordingly, I find that the post-shooting evidence fails two of the *Cofield* prongs, and that either one of those findings would render the evidence inadmissible.

### IV.

I add only this. Because the majority relies on *N.J.R.E.* 404(b), the same legal framework applied by the trial court, I submit that the majority should have reviewed the trial court's conclusions for an abuse of discretion instead of de novo. Put differently, the trial court's determinations in applying *N.J.R.E.* 404(b) deserve deference.

A trial court's decision regarding the admissibility of other-crimes evidence is reviewed under an abuse of discretion standard because of the trial court's "intimate knowledge of the case." *Marrero, supra,* 148 *N.J.* at 483, 691 *A.*2d 293 (quoting *State v. Ramseur,* 106 *N.J.* 123, 266, 524 *A.*2d 188 (1987)). Moreover, such determinations pursuant to *N.J.R.E.* 404(b) entail decisions regarding relevancy and undue prejudice. *Id.* at 483, 691 *A.*2d 293 (citing *Cofield, supra,* 127 *N.J.* at 338, 605 *A.*2d 230). Those trial court decisions can be overturned only if there is "a clear error of

judgment" which led to a ruling "so wide of the mark that a manifest denial of justice resulted." *Id.* at 483–84, 691 *A.*2d 293 (quoting *State v. DiFrisco,* 137 *N.J.* 434, 496–97, 645 *A.*2d 734 (1994)).

Here, the majority engages in a plenary review of the trial court's decision to analyze the evidence under *N.J.R.E.* 404(b) and concludes that the evidence is admissible. In doing so, however, the majority does not reach the conclusion that *N.J.R.E.* 404(b) is inapplicable, a determination that I believe is a prerequisite to setting aside the trial court's 404(b) conclusions absent an abuse of discretion. That approach undermines the majority's clean-slate evaluation of the evidence because de novo review is premised on an appellate court's finding that the trial court's initial legal conclusion was in error—a finding that the majority does not make here.

Because the trial court applied an appropriate evidentiary framework, and because the trial court's conclusion is a reasonable interpretation of defendant's conduct, the trial court did not commit "a clear error of judgment" or abuse its discretion by finding the evidence inadmissible. *Marrero, supra,* 148 *N.J.* at 483–84, 691 *A.*2d 293 (quoting *DiFrisco, supra,* 137 *N.J.* at 496–97, 645 *A.*2d 734). I would thus afford deference to the trial court's judgment under *N.J.R.E.* 404(b).

## V.

In conclusion, I would apply *N.J.R.E.* 404(b) and uphold the trial court's exclusion of the evidence on the merits because of its lack of relevancy and because its apparent prejudice outweighs its probative value. I would defer to the trial court's evidentiary determinations because of the absence of any indication of an abuse of discretion. For the foregoing reasons, I respectfully dissent.

Justice LONG and Justice WALLACE join in this opinion.

*For reversal and remandment*—Justices LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—4.

*For affirmance*—Chief Justice ZAZZÁLI and Justices LONG and WALLACE—3.