CHIEF JUSTICE RABNER,
concurring.
In this case, officers interrogated defendant Anthony Cole for two hours and ended the interview. Defendant cooperated throughout; he calmly answered questions and denied that he had committed a crime. At the very end of the interview, defendant repeated that he was innocent and asked to be released. The officers instead told him that he was headed to the county jail. They then left the room.
Over the objection of defense counsel, the jury watched a six-minute video recording of what happened next—while defendant sat alone in the interrogation room after the interview had ended. He was visibly upset, muttered to himself, and cursed. Based on that evidence, the prosecution argued in summation that defendant manipulated his appearance during the interview because he was guilty.
The Appellate Division concluded that it was error for the trial court to admit the video in evidence. The majority disagrees. In my judgment, the jury should not have seen the video based on a straightforward application of the rules of evidence.
Under the circumstances, the video’s probative value was limited. Its minimal relevance was substantially outweighed by the risk of undue prejudice and the danger that the recording would mislead the jury. As a result, the evidence should have been excluded under N.J.R.E. 403. Because the error was harmless in light of other strong evidence of defendant’s guilt, I concur in the judgment.
I.
The facts are not in dispute. On December 16, 2009, the police arrested defendant for the attempted murder of David Donatelli *463 several months earlier. Donatelli, a long-time employee of the South Plainfield Public Works Department, had been at the park preparing for the town’s Labor Day fireworks display when someone slashed his neck with a knife. Because of the severe nature of the wound, Donatelli faced a substantial risk of death and was rushed to the hospital. After emergency surgery, he fortunately survived.
The police brought defendant to headquarters, where he waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At trial, the jury watched the recorded statement of the interview that followed. Defendant responded to questions that two detectives posed and admitted that he went to the park on the night of the fireworks display. But he repeatedly denied that he attacked Donatelli. During the interview, defendant was responsive, talkative, and in control.
The interview lasted about two hours. At the end, defendant insisted that he was innocent, as he had throughout the interrogation. A detective then said the following: “[I]f you change your mind and you do want to reach out back to me[,] [c]all me from the County Jail[;] tell your attorney to reach out to me. That’s where it’s going." (emphases added). Defendant replied, “Why am I going to jail? ... I’m not guilty.” In response, the detective told defendant he was headed to “the cell for the time being” but, if he “want[ed] to talk to the detectives,” he could “talk to an officer,” “get someone’s attention,” and “talk to someone.” Defendant again insisted that he was not guilty and asked, “Can I leave?” When he was told, “[yjou’re not leaving,” he protested again. At that point, the detectives walked out of the interview room and the interview ended. Nothing in the record suggests this marked the start of a short break with more questions to follow; the interview was over.
The detectives left defendant alone in the room, and a camera continued to record him for almost six minutes. While alone, defendant appeared angry and distraught; he cursed, gestured, and muttered quietly to himself.
*464 Defendant was then moved back to the booking room and, when the chief of police walked by in the hallway, defendant asked to speak with him. Defendant was escorted back to the interview room where a second interview took place. The jury watched a video of that statement as well. In it, defendant continued to insist that he was innocent. The police left defendant alone for ninety seconds during the second interview and for another two minutes at the end. Each time, he again muttered quietly to himself.
At trial, defense counsel argued that the State should not be allowed to introduce the six-minute portion of the video taken when defendant was alone. Counsel stressed that the evidence had no probative value and was prejudicial. He also argued that the jury was “not going to know what to do with” the ambiguous evidence. The State countered that the evidence offered context and would enable jurors to determine the witness’s credibility during the prior statement.
The trial judge overruled the objection. He reasoned that, although the evidence
is subject to interpretation, I have to agree with the State that it’s clearly conduct which relates to the statements previously made by this defendant.
The ability of a defendant to maintain control of himself, to respond in the manner in which he responded to police questions, to be demonstrative in his—and appropriately demonstrative to questioning, and then when the defendant believes, I assume, knows that police aren’t there, knows that it’s being recorded, he mouths some of the curse words directly to the camera. Cleariy, that’s an indication of his demeanor and his conduct, and I think it is something that a jury should see in helping them understand [the] full tenor and context of the defendant’s statement.
Aside from noting generally that “when a [defendant confesses, that also impacts negatively on a [defendant,” the trial court did not reference N.J.R.E. 403 or weigh the disputed evidence’s probative value against its risk of undue prejudice or of misleading the jury. The court ruled that both videos could be viewed in their entirety “with appropriate limiting instructions.” The judge invited defense counsel to present an instruction. Counsel did not submit one, and the court did not give one to the jury.
The prosecution, in summation, stressed the importance of defendant’s demeanor after the first interview, when he sat alone *465 in the interview room. The State’s arguments, repeated below, were more than a stray, passing reference:
All the statements that he made on that day, December 16th, are to be analyzed and considered in the context of the level of anger and disturbance that existed when the police leave the room. You observed it, members of the jury. He's the pillar of the community, the Mayor of the metropolis throughout the whole interview.
And on that board as soon as the police officers leave, he knows they got him and that’s when his hand goes down his pants and he's mouthing “M F’er” to the world because he knew they got him. And you saw the switch and that’s how you’re to analyze the credibility of the statements made by the defendant on December 16th. Utilize those portions of his statement when law enforcement was not in the room.
Able to turn it on and off at his leisure, and unless guilty, there is no need to manipulate your presentation, your appearance to law enforcement. Manipulation is the process by which a guilty party attempts to get over.
II.
Relevant evidence is generally admissible. See N.J.R.E. 402. The threshold for relevancy is not high; to be “relevant,” evidence must have “a tendency in reason to prove or disprove any fact of consequence to the determination of the action.” N.J.R.E. 401.
Evidence of a person’s demeanor will ordinarily meet that standard for a simple reason: how a person behaves can reveal whether he or she should be believed. If an individual reacts to an officer’s questions in a hostile, defensive, or evasive way, for example, a juror might reasonably think that the person’s answers are not credible. That type of evidence is plainly relevant.
In this case, it is questionable whether evidence of defendant’s demeanor during the six minutes he was alone after the interview can satisfy the relevancy test. The State contends that defendant’s marked change in demeanor bears on credibility. But it can also mean a number of other things. In fact, there are multiple reasonable inferences that can be drawn from defendant’s behavior after the interview.
As the State argues, defendant’s change in mood may be a sign that his denials during the interrogation were not credible. In essence, as the State suggests, defendant may have been upset *466 because he realized he had been caught, and he only revealed his true beliefs when left alone. Yet defendant may also have been upset because he believed he was innocent and law enforcement officers decided not to release him. Or the evidence could prove that he has a habit of mumbling to himself when alone—as he did three times in the span of an hour.
Under the circumstances, the evidence is not powerful proof of defendant’s guilt. At most, it is minimally probative.
If evidence is relevant, trial courts may be asked to assess whether “its probative value is substantially outweighed by the risk of ... undue prejudice, confusion of issues, or misleading the jury.” N.J.R.E. 403. To be sure, the video portrays defendant in a very unflattering light, which underscores the risk of undue prejudice the video presented. Even more problematic, though, the type of evidence in question could well mislead a jury.
We trust jurors to evaluate a witness’s credibility. When they hear trial testimony or review a suspect’s recorded statement, jurors evaluate not only what the witness has said but also how he spoke. This case is different. Defendant was no longer being questioned; he was alone after an interview had ended. He did not make audible comments that might be admissible; he was agitated and upset.
Jurors, as factfinders, are routinely asked to decide what evidence means and choose among conflicting inferences. But there are no standards to guide a jury and help it understand a witness’s ambiguous change of mood after an interrogation has ended. Left on its own, as the jury was in this case, this type of equivocal evidence could easily mislead a jury. Even with a limiting instruction, the jury could not interpret defendant’s behavior after the interview without speculating about its meaning. It was therefore error to admit the evidence. In my view, that ruling was an abuse of discretion. See State v. Gorthy, 226 N.J. 516, 539, 145 A.3d 146 (2016).
*467 Today’s opinion expands the law but cites no authority that directly supports the broader approach it adopts. The prosecution has not identified any case law that approves the use of evidence of a witness’s demeanor after an interrogation has ended. Nor does the majority rely on any such precedent.
The State and the Attorney General, as amicus, discuss State v. Cook, 179 N.J. 633, 847 A.2d 530 (2004). That important decision considered the benefits of recording custodial interrogations and announced that the Court would establish a committee to “study and make recommendations on the use of electronic recordation of custodial interrogations.” Id. at 562, 847 A.2d 530. The ruling in no way addressed the particular issue this appeal raises. A year later, the Court adopted Rule 3:17 on “electronic recordation.” That rule, as well, does not answer the question now before the Court.
The State’s reliance on State v. Diaz-Bridges, 208 N.J. 544, 34 A.3d 748 (2012), is also unavailing. Diaz-Bridges analyzed a pretrial ruling that suppressed a defendant’s taped statement. The case turned on whether the defendant’s request to speak with his mother during an interrogation amounted to an assertion of the right to silence. Id. at 548, 34 A.3d 748. The defendant spoke with the police on two separate occasions. At different times during the lengthy second interrogation, the police took breaks and left defendant alone. Id. at 554-55, 34 A.3d 748. During a break after six hours, with the recording equipment running, defendant began to cry and said he wanted to go home. Id. at 555, 34 A.3d 748.
The trial court suppressed the entire second statement; the Appellate Division suppressed part of it. Id. at 558, 34 A.3d 748. The Court reversed after it concluded that, under all of the circumstances, defendant’s request did not “constitute [an] invocation of his right to silence.” Id. at 572, 34 A.3d 748.
The State maintains that the Court’s reversal of the suppression order in Diaz-Bridges amounted to a finding that the entire video should be admitted at trial. But no party argued about whether portions of the video when defendant was alone—during breaks in *468 an interrogation—should be played for the jury. And the opinion simply does not consider the issue.
In short, neither Cook nor Diaz-Bridges supports the majority’s ruling.
Today’s outcome also leaves a number of unanswered questions. Will it become common at trial for prosecutors to play recordings of defendants after an interview has ended—while defendants sit alone in an interrogation room? What will qualify as relevant evidence of demeanor in those instances? If a witness responds to questioning in a pleasant tone but turns sullen when alone afterward, can that be presented to assail the witness’s credibility? Suppose a witness starts to cross his arms and look about nervously after an interview? Can prosecutors refer to that to offer context?
In my judgment, the risk of undue prejudice and of misleading the jury substantially outweighed the probative value of the six-minute video. As a result, it should have been excluded under N.J.R.E. 403, and it was an abuse of discretion to admit the evidence.[1]
III.
The majority ably recounts the strong evidence in the record against defendant: police found gloves near the scene of the crime with both the victim’s blood on the outside and skin cells on the inside that matched defendant’s DNA; defendant’s mother contradicted his alibi; and a friend testified that defendant had asked if he could get a ride home from the fireworks display, said he would be back in a few minutes, and never reappeared. In light of that *469 and other evidence, I do not believe the admission of the six-minute video “raise[s] a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached.” See State v. Sterling, 216 N.J. 65, 101, 71 A.3d 786 (2013). The error was harmless.
I therefore respectfully concur in the judgment.

 The Appellate Division remanded for a new trial and suggested in a footnote that N.J.R.E. 403 posed a "formidable barrier.” The panel, though, analyzed the disputed evidence under a line of authority about consciousness of guilt. See State v. Williams, 190 N.J. 114, 125-29, 919 A.2d 90 (2007). Because I believe the evidence was inadmissible in the first place, I do not reach that question. That said, the prosecutor's arguments in summation went beyond his stated purpose in seeking to admit the evidence.