**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2965-18
              A-2966-18
              A-3208-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MAYRENID HIDALGO-
BAUTISTA, a/k/a MAYRENID
BAUTISTA, and MAYRENID
HIDALGO,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RODNEY ROSARIO, a/k/a
RONNEY ROSARIO,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

Plaintiff-Respondent,

v.

ALEJANDRO LOPEZ, a/k/a
ALEX LOPEZ,

Defendant-Appellant.

_____

Submitted February 24, 2021 – Decided June 30, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-11-0792.

Joseph E. Krakora, Public Defender, attorney for appellant Mayrenid Hidalgo-Bautista (Michele A. Adubato, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Rodney Rosario (Robert Carter Pierce, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Alejandro Lopez (Frank M. Gennaro, Designated Counsel, on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant Rodney Rosario filed a pro se supplemental brief.

A-2965-18

Appellant Alejandro Lopez filed a pro se supplemental brief.

PER CURIAM

Co-defendants Mayrenid Hidalgo-Bautista (a/k/a Mayrenid Bautista, Mayrenid Hidalgo), Rodney Rosario (a/k/a Ronney Rosario), and Alejandro Lopez (a/k/a Alex Lopez) appeal their convictions and sentences arising from the November 23, 2013 murder of Jose Luis Disla Cordero. We affirm, except we remand so the judgments of conviction can be corrected.[1]

Tried by a jury, Rosario and Lopez were convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1); conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3(a)(1); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); two counts of third-degree criminal restraint, N.J.S.A. 2C:13-2(a); and two counts of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4).[2]

---

[1] Additionally, there appears to be a discrepancy between the judge's sentences for Rosario and Lopez and the judgments of conviction.

[2] Lopez and Rosario were acquitted of the aggravated assault and criminal restraint of Cesar Mercado Torres.

The trial judge sentenced defendants on January 11, 2019. Rosario received sixty years subject to the No Early Release Act's (NERA) eighty-five percent parole ineligibility requirement, N.J.S.A. 2C:43-7.2, for murder, and terms concurrent to the sixty-year sentence as follows: an eight-year term for burglary, subject to NERA; and an eight-year term for unlawful possession, subject to the Graves Act, N.J.S.A. 2C:43-6.2. He imposed two concurrent four-year terms on the criminal restraint convictions, however, they were to be served consecutive to the sixty-year sentence. Despite merging conspiracy, felony murder, possession of a weapon for an unlawful purpose, and both of the aggravated assault with a firearm convictions into the murder conviction, the judge sentenced these offenses individually—eighteen years for conspiracy, sixty years for felony murder, eight years for the possession of a weapon for an unlawful purpose, and one year for each aggravated assault with a firearm.

Lopez was sentenced to fifty-five years subject to NERA on the murder. The trial judge imposed the following concurrent terms: a seven-year NERA term for burglary; and an eight-year Graves Act term for unlawful possession of a firearm. He also imposed a term of four years consecutive to the murder sentence on the criminal restraints, although the two terms were to be served concurrent to each other. Like with Rosario, despite merger of the conspiracy,

4

felony murder, possession of a weapon for an unlawful purpose, and aggravated assaults with a firearm, the judge sentenced the offenses individually. He imposed seventeen years for conspiracy to commit murder, fifty-five years for felony murder, eight years for possession of a weapon for an unlawful purpose, and one year for both aggravated assault with a firearm convictions.

Hidalgo-Bautista was convicted of the only charge for which she was indicted, first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3(a)(1). The judge imposed a seventeen-year NERA term on the offense.

Miguel Angel Rosario Mejia, Rosario's cousin, participated in the crime, and gave a statement to police implicating himself and the others. He entered into a plea agreement with the State in exchange for his testimony.

The trial testimony, including Mejia's, established that co-defendants and the victim were in the business of selling drugs. Believing that Cordero had stolen jewelry, drugs, money, and a handgun from them, they decided to kill him and secure the return of their belongings.

Lopez, Rosario, and Mejia drove Hidalgo-Bautista's car from the rendezvous point to Cordero's apartment. Torres, the victim's acquaintance, was sitting in the victim's car parked in front of the victim's home when the group arrived. Rosario carried a 9 mm semi-automatic handgun; Mejia a .357 caliber

revolver; Lopez a .38 caliber revolver. They forced Torres to exit the vehicle at gunpoint and to open the door to the apartment. Once inside, they ordered Torres and the victim, along with two other men—Wallington Mosquera and Eduardo Ramos—to stand against a wall. As the co-defendants searched the occupants, a struggle broke out during which Rosario ordered Mejia to shoot the victim in the foot. Lopez then shot Cordero several times, and Rosario shot Cordero in the head.

The men then called Hidalgo-Bautista to pick them up in a taxi. Rosario and Mejia eventually fled the country. Hidalgo-Bautista asked her sister to get Rosario's passport from his apartment and send it in a taxi; Hidalgo-Bautista transferred $200 to the men via Western Union. Hidalgo-Bautista kept the weapons, intending to send them to the Dominican Republic. Rosario and Mejia were eventually arrested in Mexico and extradited—causing the years-long delay in the scheduling of the trial.

After the murder, Lopez contacted a friend, Shannon Hicks, to pick him up at his apartment. When she arrived, she saw he was carrying two bags containing clothes, a PlayStation game system, a black gun, and cocaine. The two went to Hicks's house, and approximately two days later, she returned to his apartment to collect the rest of his belongings. According to Hicks, Lopez

seemed very anxious and did not want to return to his home. She last saw him in 2013, and claimed at trial that she could not identify him because he looked so different from the Lopez she knew. She said she thought she picked Lopez up around Black Friday.

Lopez objected to Hicks's testimony regarding the timeline of events, as she could not remember the exact date she picked him up. Hicks referred to him being "locked up for how[ever] long," attributing his change in appearance to that. The trial judge immediately gave a curative instruction, to which Lopez's trial counsel agreed. Hicks said that Lopez seemed "extremely paranoid, as if something really bad had happened . . . [and] he didn't want to go back . . . ."

Before trial, Hidalgo-Bautista sought to exclude post-shooting events from the State's evidence. The trial judge denied her application, finding the acts were committed in furtherance of the crime and evidenced consciousness of guilt.

Mejia testified at trial in line with his earlier statements that he, the co-defendants, and the victim, were involved in drug distribution. The issue of their involvement in an ongoing drug distribution scheme had been the subject of Rule 104 hearings. The trial judge determined, after applying the standards

for admission under N.J.R.E. 403 and 404(b), that the testimony would be admitted as establishing motive.

At trial, Mejia referred to Rosario as "the boss" of the drug enterprise, which he had not done earlier. Although the judge did not specifically rule on whether Mejia could testify about Rosario's role in the group, he did in general terms decide he would allow Mejia to fully explain his own relationship with the others and the group's relationship with the victim, namely, that they were all involved in the drug trade and had access to weapons.

Several days after the murder, Mosquera and Ramos, the two men who were stood against the wall at gunpoint during the incident, provided statements. Mosquera initially claimed he did not know who shot the victim, but later that night, after speaking to officers off the record, he made a second statement in which he named Rosario as one of the shooters, but claimed not to know the names of the others. The officer who testified was not the officer who spoke to Mosquera off the record, although she had been in the area. She was present during the recorded interviews. Mosquera's statement implicating Rosario was introduced at trial.

A-2965-18

The facts as described here will be supplemented in the relevant sections. We do not combine the points raised by each defendant, but set them forth individually at the beginning of the relevant portions of this opinion.

I.

Lopez raises the following claims of error by way of counseled brief:

POINT I

THE TRIAL COURT'S ADMISSION OF EVIDENCE FROM MIGUEL MEJIA REGARDING DEFENDANT'S INVOLVEMENT IN THE DRUG TRADE, AS WELL AS THE ADDITIONAL TESTIMONY REGARDING CONTROLLED DANGEROUS SUBSTANCES, DENIED DEFENDANT A FAIR TRIAL.

POINT II

THE TRIAL COURT ERRED BY ADMITTING THE TESTIMONY OF SHANNON HICKS ON THE ISSUE OF DEFENDANT'S CONSCIOUSNESS OF GUILT.

POINT III

THE AGGREGATE SENTENCE OF [SIXTY-THREE] YEARS IN PRISON, WITH [FIFTY-FIVE] YEARS SUBJECT TO THE NO EARLY RELEASE ACT, IS EXCESSIVE.

POINT IV

THE IMPOSITION OF SEPARATE SENTENCES ON COUNTS OF THE INDICTMENT THAT WERE

9

MERGED FOR PURPOSES OF SENTENCING WAS
IMPROPER.

By way of pro se letter brief, Lopez raises the following points:

POINT I

TESTIMONY BY A STATE WITNESS ABOUT
DEFENDANT BEING "LOCKED UP FOR A LONG
TIME" PREJUDICED [DEFENDANT'S] RIGHT[] TO
A FAIR TRIAL, WHICH EXPOSED THE JURY TO
DEFENDANT'S CRIMINAL HISTORY, THUS
REQUIRING A REVERSAL OF HIS CONVICTION.

POINT II

THE FAILURE OF THE TRIAL COURT TO
INCLUDE STATE REQUESTED LESSER[-]
INCLUDED OFFENSES VIOLATED
DEFENDANT'S RIGHT [TO] A FAIR TRIAL.

POINT III

THE STATE'S CLOSING ARGUMENT
REGARDING THE BALLISTIC AND GUN
EVIDENCE CONFUSED THE JURY AND MAY
EVEN HAVE SHIFTED THE BURDEN UPON
DEFENDANT, THEREBY REQUIRING A
REVERSAL.

A.

Lopez's first point is that the admission of Mejia's testimony and prior

statements denied him the right to a fair trial. Because Lopez did not challenge

the admission of the testimony at trial, we review it under the plain error

standard. In order to warrant reversal, it must have been capable of bringing about an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325, 337-38 (1971).

The four-prong test for admission is set forth in State v. Cofield, 127 N.J. 328, 338 (1992):

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

The trial judge applied these factors before concluding that testimony regarding defendants' and the victim's involvement with the drug distribution business was admissible. At trial, Mejia testified that he, the co-defendants, and the victim sold heroin and cocaine from a location owned by Rosario. He further testified that when a gun, some cash, a quantity of heroin, and a gold chain were stolen, the co-defendants determined that Cordero had stolen the items and decided to retrieve the items and kill him. At trial, the State offered expert testimony regarding narcotics distribution to establish that the materials found

11

in the victim's home, including approximately fifty grams of heroin, were possessed with the intent to distribute.

Lopez bases his argument on appeal on State v. Collier, 316 N.J. Super. 181 (App. Div. 1998), in which we found prior conflicts between the decedent and the defendant should be sanitized as not necessary to establish motive. Relying on Collier, Lopez now contends that adequate motive evidence was available by merely presenting the jury with co-defendants' belief that the victim stole cash and jewelry, without introducing the subject of drugs. But as the trial judge explained in his decision, the details of the conflict, including narcotics, were admissible in order to allow the State the opportunity to present the proofs in context—that the dispute was of such a nature that it would establish motive to kill.

We overturn the admission of other crimes evidence "where there is a clear error of judgment . . . ." State v. Barden, 195 N.J. 375, 391 (2008) (quoting State v. Marrero, 148 N.J. 469, 483 (1997)). Such a showing has not been made here. "[A] strong showing of prejudice is necessary to exclude motive evidence under the balancing test of N.J.R.E. 403." State v. Calleia, 206 N.J. 274, 294 (2011). The fact the participants were involved in the drug distribution trade

strengthened the State's argument that defendants had reason to kill the victim as a result of his theft.

Under the circumstances, the trial judge's decision to admit the testimony was not a clear error of judgment nor an abuse of discretion. See State v. Garcia, 245 N.J. 412, 430 (2021). Details regarding the types of drugs and the location from which distributions were made were simply not so prejudicial that they required sanitization. As the trial judge found, the evidence was highly relevant, close in time to the murder, clear and convincing, and had probative value far in excess of its potential prejudice. See Cofield, 127 N.J. at 338.

## B.

Lopez also contends that the trial court erred by admitting Hicks's testimony on the issue of consciousness of guilt and flight. Hicks said when she picked defendant up, he had two bags, one of which contained clothing and a PlayStation game system, and the other containing cocaine and a black gun. She could not identify whether the gun was a revolver or a semi-automatic weapon. At trial, Lopez objected to the admission of the testimony because Hicks could not recall the precise date of her encounter with defendant, which could have occurred either before or after the shooting. Although concerned about her lack of recall regarding dates, the trial judge nonetheless admitted the testimony.

A-2965-18

On the stand, Hicks said defendant informed her that "something" had happened that made it necessary for him to leave. She thought Lopez's call came approximately a week before Black Friday, and said she knew the drug in defendant's bag was cocaine because she ingested some. On cross-examination, however, she could not specify which defendant was Lopez. The trial judge instructed the jury that the testimony was being offered as evidence of consciousness of guilt and flight.

Lopez objected to Hicks's testimony during the 104 hearing. The trial judge made his decision employing Rule 403 and the Cofield analysis, although he did not specifically name the rule, the case, or the factors, unfortunately. The trial judge deemed the presence of cocaine in Lopez's bag to be relevant because it might explain the reason for Hicks's inability to be more precise as to the dates she allowed Lopez to stay with her. The trial judge found her a credible witness despite the fact she came to court only as a result of a subpoena and a bench warrant for failure to appear.

The trial judge acknowledged that Hicks's lack of precise memory was problematic with regard to the admission of her testimony, however, he also noted the events occurred approximately five years prior and that her estimate that they occurred approximately a week before Black Friday sufficed given the

14

passage of time and her drug use while in Lopez's company. Thus, it was not an abuse of discretion to admit her testimony. Hicks's testimony was highly relevant and probative, concerned events close in time to the murder, was clear and convincing, and not outweighed by any prejudice. It satisfied both Rule 403 and Cofield.

C.

Lopez contends that the aggregate sentence of sixty-three years in prison subject to fifty-five years of parole ineligibility under NERA is excessive. He further contends the record did not support the aggravating factors, N.J.S.A. 2C:44-1(a), found by the trial court and that the trial judge should not have imposed consecutive sentences.

The trial judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3), the likelihood of reoffense, highlighting Lopez's lack of employment. Certainly, unemployment alone is not a risk factor for the commission of crimes—but the trial judge was concerned about the likelihood that Lopez had earned his living for years in the drug trade. He also found in support of aggravating factor three Lopez's prior criminal history, history of drug use, and lack of remorse.

A sentencing judge must base his or her decision on "competent, reasonably credible evidence." State v. Roth, 95 N.J. 334, 363 (1984). Given

the evidence that the trial judge found in support of aggravating factor three, we see no error. His conclusion was based on competent, reasonably credible evidence. Similarly, the trial judge did not rely on Lopez's lack of remorse alone as a basis for finding aggravating factor three was present. It was only one of several considerations.

In reaching a decision regarding consecutive as opposed to concurrent sentences, our courts look to State v. Yarbough, 100 N.J. 627, 643-44 (1985), and N.J.S.A. 2C:44-5(a). In this case, Lopez contends that the criminal restraint of Mosquera and Ramos was not a crime predominantly independent from the murder. The court reasoned that the aggravated assault and unlawful restraint of the apartment's other occupants stood separately from the murder. They involved different victims, and victims unrelated to the dispute between the co-defendants and Cordero. The other victims were subjected to separate acts of violence directed at them. The trial judge explained that, in his mind, that meant they were "separate and distinct acts of violence and crimes against distinct victims."

We agree. These were crimes involving essentially two sets of victims—the murder victim who was the focus of the home invasion burglary, and the men who happened to be in the apartment at the time, essentially mere

16

bystanders.  Those stated differences accord with law and are supported by the evidence in the record.  Imposition of consecutive sentences met the <u>Yarbough</u> guidelines and thus was not an abuse of discretion.  Overall, it was fair and does not shock the conscience.  <u>See</u> <u>State v. Torres</u>, ___ N.J. ___, ___ (2021) (slip op. at 32-33).

Lopez also contends that the trial judge failed to take into account the real-time consequences of NERA.  Nothing in the record supports the claim, and we note that the judge did not impose the maximum sentence for murder, life subject to NERA's eighty-five-percent parole disqualifier.  <u>See</u> N.J.S.A. 2C:11-3(b)(1). With regard to the flat consecutive sentence, Lopez may actually not serve a single day because of accumulated credits.  In light of his prior criminal history, and the weight the trial judge accorded that factor, aggravating factor six, N.J.S.A. 2C:44-1(a)(6), the sentence appears appropriate.  The trial judge based his decision on credible evidence in the record.  It was not an abuse of discretion. <u>See</u> <u>State v. Case</u>, 220 N.J. 49, 63 (2014).  The overall sentence does not shock the conscience.  <u>See</u> <u>Torres</u>, ___ N.J. ___ (slip op. at 32-33).

D.

Lopez and Rosario were sentenced on merged crimes.  It is well-established that in "a case of merger, . . . a separate sentence should not be

17

imposed on the count which must merge with another offense." State v. Trotman, 366 N.J. Super. 226, 237 (App. Div. 2004). Therefore, we remand for correction of the judgment of conviction as to both defendants to vacate the sentences on the merged offenses, namely: conspiracy, felony murder, possession of a weapon for an unlawful purpose, and aggravated assault with a firearm.

E.

During the course of her testimony, Hicks made a passing reference to Lopez being "locked up" for some time. She had not seen him for five years, claimed he had put on significant weight, and asserted that she did not recognize him. Immediately, defense counsel objected, and the court issued a curative jury instruction. Trial counsel agreed to the instruction, to which in his pro se brief, Lopez now objects. We view this fleeting reference as one of those "instances [which] occur in almost every trial where inadmissible evidence creeps in, usually inadvertently." State v. Winter, 96 N.J. 640, 646 (1984). Defense counsel did not object to the curative instruction, which the trial judge made promptly. There is no reason to believe that the comment, more focused on whether or not Hicks recognized defendant than anything else, could have prejudiced Lopez's right to a fair trial. We consider this argument to be so

18

lacking in merit as to not warrant further discussion in a written opinion. Rule 2:11-3(e)(2).

F.

In his pro se brief, Lopez also contends that the court's failure to give lesser-included offense instructions to the jury violated his right to a fair trial. The State requested such instructions: counsel, no doubt fearing a compromise jury verdict, argued vehemently against it.

"The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e); State v. Fowler, 239 N.J. 171, 187 (2019). A rational basis exists where "evidence [presents] adequate reason for the jury to acquit the defendant on the greater charge and to convict on the lesser." State v. Brent, 137 N.J. 107, 118-19 (1994). "A defendant is entitled to an instruction on a lesser offense supported by the evidence regardless of whether the charge is consistent with the theory of the defendant's defense. However, sheer speculation does not constitute a rational basis." Id. at 118 (citations omitted).

"[T]rial courts have an independent duty to sua sponte charge on a lesser-included offense 'only where the facts in evidence "clearly indicate" the

appropriateness of that charge.'" State v. Alexander, 233 N.J. 132, 143 (2018) (quoting State v. Savage, 172 N.J. 374, 397 (2002)). The evidence "must 'jump[] off the page' to trigger a trial court's duty to sua sponte instruct a jury on that charge." Ibid. (alteration in original) (quoting State v. Denofa, 187 N.J. 24, 42 (2006)). "[J]ust because a charge meets the rational basis test does not mean it meets the clearly indicated standard." Id. at 145. Further, there is no error where a defendant strategically opts not to include a lesser-included charge. State v. Doss, 310 N.J. Super. 450, 456 (App. Div. 1998).

Lopez in his pro se brief, and Rosario in his counseled brief, contend that the court erred by not instructing the jury as to lesser-included offenses. At trial, the State argued there were grounds for the jury to convict Lopez and Rosario of aggravated manslaughter and manslaughter charges if the jury disbelieved Mejia's testimony that defendants went to the victim's apartment to kill the victim, and instead concluded the shots were fired with reckless disregard. But Rosario's counsel argued "[t]he State's theory [was] that there was a plan to kill or the intent to kill and they're claiming . . . that [Rosario] is the one who gave the head shot . . . . How that could be aggravated manslaughter or manslaughter, I don't see." He further stated Rosario was "either guilty or not guilty of the murder . . . . I don't want to give the jury the opportunity to compromise in this

case." Lopez's counsel objected because the conspiracy and felony murder charges were inconsistent with manslaughter, and four shots fired at close range did not constitute reckless conduct.

The trial court denied the State's request, reasoning:

> I think that's the posture of the State's argument before this [c]ourt and that . . . the jury might reject some or all of Mr. Mejia's testimony or other proofs and, therefore, might find their way to convict on a lesser[-]included.
>
> I don't think a lesser[-]included is appropriate under those circumstances, especially in the case here where the State's theory is that there was a premeditated, planned killing.
>
> The basis for innocence of the [d]efendants is that they didn't shoot the victim. That is not a basis for a conviction on any form of manslaughter. I don't think that the facts of this case and the evidence submitted during the trial warrant the submission to the jury of a lesser-included charge with regard to a homicide. I think, based upon my overall review of the case and feel of the case, that the potential for a compromise and unjust verdict is too great under these circumstances . . . .

The trial judge's analysis was correct. The record did not include a rational basis for an aggravated manslaughter charge. N.J.S.A. 2C:11-4(a)(1) defines aggravated manslaughter as "recklessly caus[ing] death under

21

circumstances manifesting extreme indifference to human life . . . ."  See also State v. O'Neil, 219 N.J. 598, 605 (2014).

As the trial judge reasoned, the State's case included evidence of premeditation.  No evidence supported the notion that Lopez did not intend to kill the victim but instead recklessly fired a shot in the victim's direction.  Rosario's contention that he "entered Cordero's apartment with a loaded handgun to resolve an issue rather than commit a premeditated killing" strains credulity and is not supported by the proofs in the case.

At trial, the State wished to give the jury the option to convict on the lesser-included charge if they did not accept Mejia's testimony.  However, whether the jury will believe a witness is speculative, not material to the analysis; there must be a rational basis for the charge in the evidence.  See State v. Carrero, 229 N.J. 118, 128 (2017).  Since there was no rational basis for an aggravated manslaughter charge, declining to instruct the jury on this lesser-included offense was not error.

Additionally, this claim is barred by the invited-error doctrine.  "Trial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal."  State v. Santamaria, 236 N.J. 390, 409 (2019) (quoting State v. Harper, 128 N.J. Super.

A-2965-18

270, 277 (App. Div. 1974)).  In a criminal case, "[s]ome measure of reliance by the court is necessary for the invited-error doctrine to come into play."  State v. Jenkins, 178 N.J. 347, 359 (2004).

Rosario argued the State could not give the jury the opportunity to compromise and convict on aggravated manslaughter if they did not completely believe Mejia. Lopez also argued aggravated manslaughter was contrary to the State's theory and the evidence.  The court adopted defendants' rationales.  Thus, Rosario and Lopez may not now argue on appeal that this determination was made in error.

G.

Both Lopez and Rosario in their counseled and uncounseled briefs assert that the State engaged in prejudicial misconduct in closing when referring to the ballistics evidence, to the extent that the State shifted the burden of proof to defendants.  This argument is unclear.  The factual allegations upon which it is based are largely not found in the record.

It is black-letter law that prosecutors must confine their arguments to the evidence presented during the course of the trial.  State v. Smith, 167 N.J. 158, 178 (2001).  That occurred here.  The State argued, based on the ballistic expert's testimony, that the only untraceable bullet fragment originated from a second

revolver, not from the one that fired the other five bullets recovered at the scene. That the jury requested to hear the testimony of the ballistics expert again does not indicate the State's closing caused confusion. It merely reflected the need for clarification on an issue with a complicated expert analysis. The prosecutor's comment did not shift the burden to either defendant.

The ballistics testimony, unsurprisingly, included a certain number of inferences, and the prosecutor's statement merely tracked that testimony. In no way did the comments shift the burden of proof to defendants or stray from the expert's own words, except insofar as it drew reasonable inferences.

## II.

On appeal, Rosario makes the following points:

POINT I

THE TRIAL COURT ERRED BY ADMITTING IN[TO] EVIDENCE THE PRIOR INCONSISTENT STATEMENT OF WALLINGTON MOSQUERA.

POINT II

THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY, [SUA SPONTE], WITH THE LESSER[-]INCLUDED OFFENSES OF MURDER.

POINT III

THE PROSECUTOR COMMITTED MISCONDUCT DURING SUMMATION THAT DEPRIVED [DEFENDANT] OF A FAIR TRIAL BY MISSTATING THE BALLISTIC EVIDENCE PRESENTED AT TRIAL AND SHIFTING THE BURDEN OF PROOF TO [DEFENDANT].

POINT IV

[DEFENDANT] WAS DEPRIVED OF A FAIR TRIAL WHEN MEJIA TESTIFIED THAT [DEFENDANT] WAS THE "BOSS" OF THE NARCOTICS TRAFFICKING NETWORK THAT INCLUDED HIMSELF, CO-DEFENDANTS HIDALGO AND LOPEZ, AND THE VICTIM.

POINT V

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

Additionally, in his pro se brief, Rosario argues as follows:

POINT I

THE COURT FAILED TO NOTICE . . . LACK OF JURISDICTION IN THE COURT AT ANY TIME DURING THE PENDENCY OF THE PROCEEDING, WHICH CAUSED INSTANT WRONGFUL CONVICTION. SINCE THE TRIAL COURT PROCEEDED IN THE ACTION WITH A LACK OF JURISDICTION OF RECORD IN THE SUBJE[C]T MATTER AND THE PERSON VIA AN INVALID WARRANT, USED AS PART OF [FIRST] PROSECUTION INDI[CTME]NT NO. 14-05-00438-I BY DESIGN EXCLUDED FROM THE "PS[R]" AT

COURT HISTORY PAGES NOW ESTAB[L]ISHING "DOUBLE JEOPARDY" FOR THE [SECOND] PROSECUTION FROM CURRENT CASE INVALID INDICTMENT NO. 16-11-00792-I WHICH WAS NEVER ENDORSED AS A "TRUE BILL" BY ANY GRAND[ ]JURY FOREPERSON CONSTITUTING A VIOLATION TO DEFENDANT'S RIGHT GUARANTEED BY BOTH [N.J. CONST.] ART. I, PAR. 8; [U.S. CONST.] AMEND 5 WHICH RENDERS THE JURY VERDICT TO BE NULL AND VOID. [THIS] REQUIRE[S] THE CONVICTION TO BE OVERTURNED AND REVERSED FOR RETRIAL TO FORMALLY VACATE ALL CHARGES OF THE WRONGFUL CONVICTION AND [THE] RELEASE [OF] [DEFENDANT] FROM CUSTODY.

POINT II

PROSECUTORIAL MISCONDUCT APPLIES IN THI[S] CASE. BAD FAITH OF THE GOVERNMENT EXIST[S] DUE TO PROSECUTORIAL SUBORDINATION OF PERJURY UPON MR. ANGEL ROSARIO [MEJIA] WHO IN EXCHANGE [FOR] IMPLICATING [DEFENDANT] RECEIVED [A] FAVORABLE PLEA DEAL . . . THE STATE "KNOWINGLY" USED PERJURED TESTIMONY OF ANGEL ROSARIO MEJIA, "THE STATE'S STAR WITNESS" OVER ALL OTHERS[.] TO USE THE TESTIMONIAL PRIVILEGE TO BUILD THEIR CASE[,] WHICH TAINTED THE TRIAL PROCEEDING [AND] DID IN FACT INFLUENCE THE JUDGMENT OF THE JURY[,] REQUIRES THE CONVICTION TO BE REVERSED FOR RETRIAL[,] TO FORMALLY VACATE ALL CHARGES OF THE WRONGFUL CONVICTION AND RELEASE [DEFENDANT] FROM CUSTODY.

26

## POINT III

CRUEL AND UNUSUAL PUNISHMENT HAS BEEN INFLICTED [ON] [DEFENDANT], BY WAY OF THE DISCRETIONARY SENTENCE WHICH IS ILLEGAL. THE TRIAL COURT [IM]PROPERLY DETERMINE[D] THE MITIGATING FACTORS . . . DID NOT OUTWEIGH[] THE AGGRAVATING FACTORS REQUIRING RESENTENCING BY DROP[P]ING ONE DEGREE ON ALL [FIRST-]DEGREE[ ]COUNTS. THE "PSR" REPORT ESTABLISHES . . . THIS IS [DEFENDANT'S] FIRST INDICTABLE CONVICTION. THE RECORD DOES NOT ESTABLISH TWO OR MORE PRIOR FELONY CONVICTION[S] IN ANY JURISDICTION, AS NEXUS FOR A POINT OF ORIGIN TO COHERENTLY HEED TO THE PRIOR STATE'S SENTENCING RECOM[M]ENDATION FOR A RESULTING CONVICTION OF AGGREGATE 68 YEARS WITH [AN] [EIGHTY-FIVE PERCENT] NERA STIPULATION. THEREFORE NERA "SHALL NOT APPLY" PURSUANT TO N.J.S.A. 2C:43-7[(c)], [AND] THE SENTENCE SHOULD BE VACATED.

## POINT IV

REVERSAL IS WARRANTED, TO MAKE JUDGMENT OF ACQUITTAL. THE COURT MUST REVIEW BOTH []THE OLD AND NEW EVIDENCE[]. A COURT REVIEWING A CLAIM OF ACTUAL INNOCENCE PROPERLY CONSIDERS THE ENTIRE RECORD AS A WHOLE.

27

## A.

Evidentiary determinations made by the trial court are reviewed under an abuse of discretion standard. State v. Gorthy, 226 N.J. 516, 539 (2016). Such decisions constitute an abuse of discretion when "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir.1985)).

Rosario contends that the trial court erred by admitting Mosquera's prior inconsistent statement. He argues that by allowing it into evidence, the court abused its discretion because the State failed to prove by a preponderance of the evidence that it was reliable. The court conducted a Rule 104 hearing on admissibility pursuant to State v. Gross, 216 N.J. Super. 98 (App. Div. 1987).

Under N.J.R.E. 803(a)(1), a witness's prior statement may be admissible where "[t]he declarant-witness testifies and is subject to cross-examination about a prior otherwise admissible statement, and the statement . . . is inconsistent with the [witness's] testimony at the trial or hearing and is offered in compliance with [Rule] 613." When the party calling the witness offers the statement,

it is admissible only if, in addition to the foregoing requirements, it (A) is contained in a sound recording or in a writing made or signed by the declarant-witness in circumstances establishing its reliability; or (B) was given under oath at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition; or

(2) is consistent with the declarant-witness' testimony and is offered to rebut an express or implied charge against the declarant-witness of (A) recent fabrication or (B) improper influence or motive; or

(3) is a prior identification of a person made after perceiving that person if made in circumstances precluding unfairness or unreliability.

[N.J.R.E. 803(a).]

In State v. Gross, the Appellate Division enumerated some, but not all, of the circumstances bearing on the reliability of a statement in this scenario:

(1) the declarant's connection to and interest in the matter reported in the out-of-court statement, (2) the person or persons to whom the statement was given, (3) the place and occasion for giving the statement, (4) whether the declarant was then in custody or otherwise the target of investigation, (5) the physical and mental condition of the declarant at the time, (6) the presence or absence of other persons, (7) whether the declarant incriminated himself or sought to exculpate himself by his statement, (8) the extent to which the writing is in the declarant's hand, (9) the presence or absence, and the nature of, any interrogation, (10) whether the offered sound recording or writing contains the entirety, or only a portion or a summary, of the communication, (11) the presence or absence of any

motive to fabricate, (12) the presence or absence of any express or implicit pressures, inducements or coercion for the making of the statement, (13) whether the anticipated use of the statement was apparent or made known to the declarant, (14) the inherent believability or lack of believability of the statement and (15) the presence or absence of corroborating evidence.

[216 N.J. Super. 98, 109-10 (App. Div. 1987), aff'd, 121 N.J. 1 (1990).]

"[I]t is for the judge to determine from the proofs whether the prior statement was made or signed under circumstances establishing sufficient reliability that the factfinder may fairly consider it as substantive evidence." Id. at 110. The "appropriate burden of proof to establish that condition [is] a fair preponderance of the evidence . . . ." Gross, 121 N.J. at 15.

Detective Janet Lopez of the Union County Prosecutor's Office testified at the hearing. She said the authorities obtained an initial videotaped statement from Mosquera at around 11:03 p.m. on November 29, 2013. Thereafter, two other officers spoke with Mosquera off the record, encouraging him to tell the truth. He agreed to provide a second videotaped statement during the early morning hours of November 30.

Lopez acknowledged she was not present for the entire unrecorded conversation but said she was nearby. Mosquera was told he was free to leave following the initial statement, and Mosquera indicated that he was at the

30

detective's bureau voluntarily. Detective Johnny Ho of the Union County Prosecutor's Office and Lopez established with Mosquera that no offers or promises were made to him in exchange for his testimony, although they indicated that they would attempt to assist him by protecting him from harm if he were to be threatened.

After that testimony, the trial court found Mosquera's second statement to be credible, made free of duress. Mosquera was clearly familiar with defendants, including identifying them by characteristics such as scars and tattoos. The trial court also noted that in light of Rosario's objections to this testimony, if he had called Ho, the issue could have been more comprehensively addressed as to what was said during the unrecorded statements. However, the trial judge concluded that the State had met its burden with regard to the reliability of the earlier statement, and that Mosquera's current lack of memory was feigned.

Mosquera was clearly acquainted with defendants, and on the video, did not appear to be under either duress or pressure. Just because the State did not call Ho to discuss what was said during the unrecorded discussion did not weaken the fundamental soundness of the trial judge's decision. Thus, the State

established an adequate foundation for admission pursuant to N.J.R.E. 803(a)(1) and Gross.  Admission was not an abuse of discretion.

## B.

Rosario also contends that he was deprived of a fair trial when Mejia testified that he was the boss of a narcotics trafficking network that included Lopez, Hidalgo, the victim, and himself.  At the Rule 104 hearing, the trial court decided Mejia's testimony about the drug business in which he, the defendants, and the victim himself were involved would be admitted.  Mejia did not then claim, as he did at trial, that Rosario was "the boss" of the drug enterprise.  Thus, the trial court did not have the opportunity pre-trial to make a ruling as to the admissibility of that statement.

At trial, Mejia testified that on the night of the murder, Rosario supplied the guns to him and Lopez.  Mejia also testified Rosario used force to enter into the apartment, searched the victim, and demanded to know where the stolen drugs and gun could be found.  When the victim began to struggle with Rosario, Rosario then instructed Mejia to shoot him.  This was admissible, relevant evidence of defendant's role in the crime.

Mejia said Rosario was the boss in the context of describing the events of the evening.  Mejia explaining that he followed Rosario's instruction to shoot

the victim because he was the boss was not as damning as the fact that Rosario planned the crime, supplied the weapons, and fired the fatal shot to the victim's head. That Mejia described himself as acting under Rosario's authority because Rosario was the boss, who owned the drug "spot," was not unduly prejudicial. No objection was made at the time. The testimony was in line with the trial court's earlier ruling admitting Mejia's second statement—made, after all, by a co-conspirator and eyewitness to the murder.

## C.

The trial judge sentenced Rosario to an aggregate term of sixty-eight years subject to NERA. Rosario argues that the mitigating factors, N.J.S.A. 2C:44-1(b), outweighed the aggravating, N.J.S.A. 2C:44-1(a), and that he therefore should have been sentenced to an offense one degree lower. He further argues that aggravating factor three, N.J.S.A. 2C:44-1(a)(3), lacked support in the record because he had no prior criminal history.

The trial judge said he found aggravating factor three because Rosario accepted no responsibility, had shown no remorse for his conduct, and was in the business of selling drugs. Mejia testified that Rosario was the boss of the drug trafficking network and that Rosario provided the guns used in the

33 <span>A-2965-18</span>

shooting. The trial judge considered those factors in concluding factor three should be found. The evidence supported his finding.

Rosario claims he was actually innocent, thus aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), was inapplicable because there was no reason to deter him. Given that no evidence in the record refutes Rosario's involvement, and that the State's overwhelming proofs weighed heavily to the contrary, any claim of actual innocence lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

The trial judge could have explained to a greater extent his decision to find aggravating factor nine, the need to deter Rosario and others from committing the serious crimes of murder and criminal restraint. His failure to do so, however, is not fatal to the applicability of the factor. It is general in nature, and certainly murder and criminal restraint are offenses that should be deterred.

In support of his argument that the sentence was excessive, Rosario cites seven additional mitigating factors that he alleges the court should have taken into account: one, three, four, eight, nine, ten, and eleven. See N.J.S.A. 2C:44-1(b)(1), (3), (4), (8), (9), (10), and (11). These factors were not argued at sentencing. And the record is entirely devoid of any support for them.

Mitigating factor one, that the conduct neither caused nor threatened serious harm, is inapplicable. N.J.S.A. 2C:44-1(b)(1). Murder is one of the gravest of offenses. Nothing in the record supports mitigating factor three, that Rosario acted under a strong provocation. N.J.S.A. 2C:44-1(b)(3). Something more than theft is required to constitute strong provocation in a murder case, and the same is true of mitigating factor four, that there were grounds justifying his conduct. N.J.S.A. 2C:44-1(b)(4). Nothing in the record indicates, as required by factor eight, that the conduct was unlikely to recur. N.J.S.A. 2C:44-1(b)(8). Similarly, nothing about Rosario's character and attitudes indicated an unlikeliness that he would commit another offense—Rosario's statements during the sentence hearing were not an expression of remorse for his conduct. N.J.S.A. 2C:44-1(b)(9). Nor is mitigating factor ten applicable—Rosario does not appear to be a person who would respond affirmatively to probationary treatment. N.J.S.A. 2C:44-1(b)(10). Moreover, probation is not a sentencing option given the degrees of the offenses.

That the court gave mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), little weight is not surprising in light of the conduct and Rosario's drug distribution history. The sentence was not an abuse of discretion. The absence of any mitigating factor except seven is supported by the evidence.

A-2965-18

D.

Finally, by way of pro se point, Rosario alleges the court lacked jurisdiction because the warrant was invalid, double jeopardy applies, and the indictment was invalid.  These arguments are not clear, and we find them to lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

III.

Hidalgo-Bautista raises four points on appeal:

> POINT I
>
> THE DENIAL OF DEFENDANT'S MOTION TO EXCLUDE ALLEGED POST-SHOOTING ACTS BY DEFENDANT WAS ERROR.
>
> POINT II
>
> THE FAILURE OF THE TRIAL COURT TO GIVE A LIMITING INSTRUCTION ON THE USE OF POST-CRIME CONDUCT BY DEFENDANT WAS ERROR THAT DEPRIVED [DEFENDANT] OF A FAIR TRIAL.
>
> POINT III
>
> THERE WAS INSUFFICIENT CREDIBLE EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION BEYOND A REASONABLE DOUBT.
>
> POINT IV
>
> THE SENTENCE IMPOSED UPON DEFENDANT OF SEVENTEEN . . . YEARS WITH [EIGHTY-FIVE

PERCENT] PAROLE INELIGIBILITY WAS EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED.

A.

Hidalgo-Bautista claims that the admission of her post-murder conduct—forwarding Mejia's birth certificate to enable him to flee the country, sending money to Rosario and Mejia in Mexico, and taking possession of the murder weapons with the intention to dispose of them—was prejudicial error. She anchors the argument on the theory that the conspiracy to commit the murder ended with the victim's shooting. We do not agree.

The trial judge found these acts to be in furtherance of the conspiracy and evidenced consciousness of guilt. When a state of mind is at issue, a greater breadth of evidence is allowed, including post-crime conduct, which may be relevant "to a defendant's mental state when the conduct demonstrates consciousness of guilt." State v. Williams, 190 N.J. 114, 125 (2007); State v. Randolph, 441 N.J. Super. 533, 562 (App. Div. 2015). This alone constitutes an appropriate ground for admission. Williams, 190 N.J. at 134.

"The conspiracy continues until the object of the conspiracy is fulfilled, or proof exists that a member has withdrawn from the conspiracy." State v. Cherry, 289 N.J. Super. 503, 523 (App. Div. 1995). "However, a conspiracy

may continue beyond the actual commission of the object of the conspiracy if it is shown that a conspirator enlisted false alibi witnesses, concealed weapons, or fled in order to avoid apprehension." State v. Savage, 172 N.J. 374, 403 (2002).

Hidalgo-Bautista's efforts in concealing weapons and assisting her co-conspirators in their attempt to avoid apprehension are acts in furtherance of the conspiracy, indicating consciousness of guilt. Her post-crime conduct tends to show, as the trial judge said, that Hidalgo-Bautista was afraid of being implicated by her co-conspirators and wanted to hide her own involvement.

Mejia testified that Hidalgo-Bautista was part of the drug distribution network along with her co-defendants. He further testified that she was part of the conspiracy to regain possession of drugs, cash, guns, and jewelry allegedly stolen by the victim. She drove the three men to a bar near the victim's home in furtherance of the plot. The evidence of her conduct after the murder is therefore entirely relevant.

The court engaged in N.J.R.E. 403 analysis, concluding that the probative value to the State of the post-murder evidence far outweighed any prejudice to defendant. The post-murder acts were, in actuality, a continuation of the conspiracy and conduct that established her involvement in the underlying offense.

Hidalgo-Bautista also contends that the trial court's failure to give the jury a limiting instruction with regard to that conduct was prejudicial error. Again, we do not agree.

"[L]imiting instructions must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's uncharged misconduct . . . ." State v. Rose, 206 N.J. 141, 161 (2011). If "the evidence was not 'other crimes' evidence, the requirement that a limiting instruction be given when 'other crimes' evidence is used is inapplicable." Cherry, 289 N.J. Super. at 522.

Where the evidence is admitted to establish consciousness of guilt, a limiting instruction is appropriate. Williams, 190 N.J. at 134. The court must provide "a strong limiting instruction . . . informing the jury that it should not draw any inference of consciousness of guilt by defendant from his post-crime conduct unless it believes that defendant acted to cover up a crime." State v. Cole, 229 N.J. 430, 454 (2017) (alteration in original) (quoting Williams, 190 N.J. at 134). "The court also must carefully inform the jury of the prohibited purposes of the evidence." Williams, 190 N.J. at 134. "Where there is a failure to object, it may be presumed that the instructions were adequate." State v.

Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010) (quoting State v. Morais, 359

N.J. Super. 123, 134-35 (App. Div. 2003)).

In this case, however, the post-crime evidence which was admitted as

consciousness of guilt was also evidence of acts engaged in that were part of the

conspiracy. The jury was not barred from using the conduct as evidence of the

crime itself, thus, no limiting instruction would have been appropriate. The trial

court did not err in failing to give such an instruction, and its absence was not

plain error.

B.

Hidalgo-Bautista also contends that there was insufficient evidence of her

guilt such that she should have been acquitted. "In . . . criminal actions, the

issue of whether a jury verdict was against the weight of the evidence shall not

be cognizable on appeal unless a motion for a new trial on that ground was made

in the trial court." R. 2:10-1. Additionally, a jury verdict should stand if, "based

on the entirety of the evidence and after giving the State the benefit of all its

favorable testimony and all the favorable inferences drawn from that testimony,

a reasonable jury could find guilt beyond a reasonable doubt." State v. Williams,

218 N.J. 576, 594 (2014). Hidalgo-Bautista's claim hinges on Mejia's plea

agreement, which she asserts makes his uncorroborated testimony insufficient to support her conviction.

Hidalgo-Bautista did not move for a new trial, hence her claim is not cognizable on appeal. See State v. Pickett, 241 N.J. Super. 259, 266 (App. Div. 1990). Even if it were, the claim would have no merit. That Mejia might have been motivated to lie because of the plea agreement he reached with the State does not nullify the substance of his testimony, corroborated by other proofs in the case. The jury knew about the guilty plea and the terms of the agreement when assessing Mejia's credibility.

Mejia's testimony was corroborated, for example, by the $200 she sent to Rosario and Mejia in Mexico, and her assistance to Mejia in obtaining his birth certificate in order to enable him to flee. Testimony from the taxi driver established the transfer of the birth certificate. Hidalgo-Bautista drove the group to a bar, and they used her car to drive to the victim's home. There was sufficient evidence for the jury to conclude that she was guilty beyond a reasonable doubt.

C.

Hidalgo-Bautista also claims that a NERA seventeen-year term was excessive. She contends that the trial court should have found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), because the offense of which she was later

41

convicted happened after the charges arose in this case. Additionally, she claims mitigating factors eight and eleven should be found because she had three young children, ages five to fourteen, who would have to reside with family because of her imprisonment. N.J.S.A. 2C:44-1(b)(8), (11). The trial court found aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), (9), not mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11). The judge rejected that statutory consideration because nothing distinguished the loss Hidalgo-Bautista's children would suffer from the loss suffered by all children whose parents are incarcerated. See State v. Dalziel, 182 N.J. 494, 505 (2005). Nothing in the record supports her contention that she is unlikely to be involved in criminal conduct in the future.

It is black-letter law that a trial court in sentencing a defendant must take into account the person standing before the court on the day of sentencing. State v. Jaffe, 220 N.J. 114, 124 (2014). This includes evidence of post-offense conduct, rehabilitative or otherwise. Thus the conviction she incurred subsequent to this offense was properly taken into account at sentencing, and she was properly denied application of mitigating factor seven.

IV.

The convictions and sentences are affirmed, except that on remand, the judgments of conviction for Rosario and Lopez should be corrected to delete sentences on merged offenses as we have discussed in this opinion. Additionally, the judgments of conviction shall be amended to show counts eight and nine, while consecutive to all other counts, run concurrent with each other. Finally, Rosario's judgment of conviction should reflect an aggregate sixty-four years, and Lopez's an aggregate of fifty-nine.

Affirmed, except remanded to correct the judgments of conviction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2965-18