**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0991-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MATTHEW GONZALEZ,
a/k/a MATTHEW GONZALES,

    Defendant-Appellant.

_____

Argued January 11, 2022 – Decided February 3, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 19-02-0385.

Brenden T. Shur argued the cause for appellant (Law Offices of John J. Zarych, attorneys; John J. Zarych, and Brenden T. Shur, on the brief).

Steven K. Cuttonaro, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Steven K. Cuttonaro, of counsel and on the brief).

PER CURIAM

Defendant Matthew Gonzalez appeals from a December 4, 2020 judgment of conviction, contending the trial court erred by: denying his pretrial motion to sever two counts of a superseding indictment; and providing a jury instruction on flight. He also argues the jury's verdict was against the weight of the evidence. We affirm.

I.

On September 24, 2017, at approximately 3:00 p.m., Jason Williams walked along wooded trails behind an apartment complex in Mays Landing. When he stopped at a shed, he came across defendant, who appeared "distraught" and "rattled" while speaking on the phone. Defendant was holding a pistol and said, "if these guys want to roll up with guns or something, then they're going to have problems."

Later that evening, at around 5:20 p.m., a crowd gathered outside the apartment complex. One member of the crowd, Taufeeq Mitchell, was arguing with a person later identified as defendant's brother. A fight broke out between the two men and escalated to the point that over a dozen people were involved in the brawl. Armed with a gun, defendant approached the group and fired several shots into the crowd before retreating into the woods. Mitchell was shot

A-0991-20

twice and died of his wounds. Three other victims sustained non-fatal injuries from their gunshot wounds.

Once police officers arrived on scene, some treated the victims, while another officer obtained a surveillance camera from the area after seeing a woman tear it off her home. The surveillance video the police recovered only depicted what occurred a few hours before the shooting, but showed defendant and his brother were in the area at that time. During their investigation, the police learned the shooter was a tall, light-skinned Hispanic man wearing a light-colored shirt and multicolored shorts.

Days later, when a detective from the Hamilton Township Police Department returned to the scene and canvassed the trails behind the apartment complex, he found a metal shed with a cot inside and a red ATV parked outside. The vehicle was registered to defendant.

In November 2017, defendant met with an acquaintance, Zachary Bowen. The pair discussed the September 24 shooting, and Bowen asked defendant if he shot someone. Defendant answered, "yeah." At that time, the police were looking for Bowen, but Bowen assured defendant he would not say anything. In response to this promise, defendant shrugged, winked, and stated, "good, 'cause

3 A-0991-20

you don't know anything." Bowen understood this to mean he "better not say anything."

In December 2017, Bowen was arrested on an unrelated matter and provided a statement to the police regarding the shooting. He informed them he was at the apartment complex on the day of the shooting, met defendant in the woods behind the complex, and defendant appeared nervous. When Bowen had asked defendant why he was nervous, defendant told him that "some shit just happened." Not long after Bowen spoke to the police, defendant shaved his beard and sent a picture of himself, clean-shaven, to his girlfriend. When she asked him why he shaved, he replied, "[c]ops on me. . . . Got to look different."

In January 2018, defendant was arrested based on his suspected involvement in the shooting. His car was searched, and a cellphone was recovered. He was indicted in March 2018 and provided with discovery, including statements from Bowen and Williams, both of whom implicated defendant in the September 24 incident.

Defendant called a friend, David Ramirez, from a jailhouse phone and ordered him to "stop messin" with Bowen because Bowen spoke to the police. Defendant also called his girlfriend and told her that Bowen was "a straight-up rat . . . [and] need[ed] to get stabbed up." In June 2018, defendant again called

4

Ramirez. This time, he asked Ramirez to "persuade" Bowen "with some stuff." In the same conversation, defendant referred to Bowen and "Jay," and told Ramirez to "[c]heck" them and "[i]f they need to know what to say, just say they was under pressure, you know what I mean?" Ramirez responded, "Yo, bro, you shouldn't even be saying nothing over the phone."

By July 2018, Bowen was incarcerated in the same facility where defendant was detained. Defendant approached Bowen while the two were in a visitation area of the jail one day and defendant told Bowen, "[Y]ou're lucky I don't fuck you up." He also warned Bowen that if he did not recant his statement to the police, he would "get fucked up." Days later, Bowen recanted "for his safety," explaining he "was scared." Months later, he reaffirmed his statement, and approximately two months before the trial started, Bowen claimed defendant threatened him again.

## II.

In February 2019, an Atlantic County Grand Jury returned a superseding indictment against defendant, which included charges from the original indictment for first-degree murder, N.J.S.A. 2C:11-3(a) (count one); three counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (counts two, three, and four); second-degree possession of a firearm for an unlawful purpose,

5

N.J.S.A. 2C:39-4(a)(1) (count five); and second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count six), as well as two additional charges, i.e., bribery of a witness, N.J.S.A. 2C:28-5(d) (count seven); and first-degree witness tampering involving the crime of murder, N.J.S.A. 2C:28-5(a)(1) (count eight).

Defendant filed a severance motion, requesting that counts seven and eight be tried separately from the balance of the charges in the superseding indictment. During argument on the motion, defense counsel claimed the bribery and witness tampering "charges themselves are so prejudicial." She represented that her concern about counts seven and eight "became more heightened, because [the State intended to] us[e] a series of phone calls that . . . [defendant] allegedly made from the jail to . . . David Ramirez, and to his girlfriend[.]" Defense counsel also argued that

> no matter what we do in terms of at least a piece of the evidence that goes to the State's charge of witness tampering, we can't avoid a jail reference . . . . [due to the] alleged July 9[,] 2018 meeting between my client and Zachary Bowen in the jail where my client allegedly threatened him.

Referring again to the series of phone calls and the "alleged incident between [defendant] and Zachary Bowen" at the jail, defense counsel added:

> I'm not arguing that that evidence wouldn't be admissible, if the State were to bring these . . . charges of witness tampering and attempted bribery alone . . . . And at a trial on just those two counts, the State could introduce that evidence, but those counts should be severed to prevent any prejudice to my client.

She further contended defendant's incarceration was "not relevant to anything" yet was "an integral part of the proofs to the State's witness tampering charge" because the State intended to refer to "jail logs."

The State countered that the phone calls defendant made to Ramirez and his girlfriend, as well as threats he made to Bowen while lodged in the same jail facility, were "relevant to the defendant's state of mind because his conduct demonstrate[d] consciousness of guilt." Further, the State argued the probative value of the evidence demonstrating defendant's consciousness of guilt was not outweighed by any prejudice to defendant.

The judge denied the severance motion, finding "[t]he evidence and the charge of witness tampering and bribery go to the issue of whether there is consciousness of guilt here." She also determined that the phone calls to be introduced by the State could be "sanitized" so that "references to drugs, or dealing drugs, or [defendant] being in jail won't come in." Regarding the alleged threat defendant made to Bowen in July 2018, when the pair were held at the same facility, the judge found "it's not possible to avoid the jail reference . . .

7

for . . . the State to be able to provide the evidence that it has of that interaction."

But she

> agree[d] with the State that juries aren't stupid, that there are many ways that someone can find themselves in jail. It's not unheard of that someone who is facing a murder charge would be incarcerated pending the trial of that charge. That does not mean that the defendant is guilty[.] . . . And . . . a limiting instruction [to] the jury that they're not to consider the fact that the defendant was in jail when the statement was made, should be sufficient. . . . [I]t is reasonable to expect that the State would properly bring in that evidence in order to prove that with the logs and the testimony of the jail personnel as to that particular day.

At trial, the State called Bowen and other fact witnesses who were present at the apartment complex on the day of the shooting. Bowen testified that on that day, he met defendant in the woods behind the apartment complex and found defendant on the phone. Bowen stated defendant appeared nervous, so he asked defendant "what was going on." Defendant answered that Bowen should "get out of [t]here" and that "some shit just happened[,]" prompting Bowen to leave the area. Bowen stated he tried to get in touch with defendant thereafter, but defendant's phone numbers were not "in service[.]" Further, Bowen testified he and defendant met in person in November 2017, at which point defendant admitted he shot someone during the September 24 incident.

A-0991-20

Bowen also stated defendant threatened him in July 2018, when the men were detained at the same jail, telling Bowen he would "get fucked up" if he did not recant his statements to the police. Bowen admitted he recanted his statement days later because he was "scared." Moreover, Bowen testified that after he reaffirmed his statement to the police, he received a message from defendant approximately two months before the trial started, and Bowen understood the message was meant to convey he "needed to take [his] statement back again."

The State also played recordings of phone calls for the jury that defendant placed while in jail, wherein he stated Bowen was a "rat" and needed to get "stabbed up." Additionally, the State produced texts showing Bowen and Williams were in communication with defendant on the day of the shooting, and that defendant communicated with Bowen in November 2017, just days before the two met in person.

When testimony ended, the judge conducted a charge conference pursuant to Rule 1:8-7(b), and heard argument about whether to include a flight charge in her instructions. Defense counsel contended the "mere departure from a place where a crime has been committed d[id] not constitute flight[,]" nor was the fact defendant changed his appearance by shaving his beard before his arrest

9

sufficient to trigger a flight charge. The judge disagreed, finding that after the shooting, there were a "multitude of indications that the defendant was fearing an accusation and trying to stay away from the police and evading[,]" including his changed appearance, and "texting that change of appearance . . . was to . . . avoid the cops." Further, the judge observed there was a text recovered from defendant's phone where he mentioned he did not get "stopped" after the shooting. Moreover, she found defendant changed his phone numbers after the shooting, had "multiple phone numbers," and fled "from the scene of the shooting directly after it occurred." Thus, she concluded a "flight instruction [wa]s appropriate."

The jury convicted defendant of: aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1) (a lesser-included offense of count one), second-degree aggravated assault (count two), two counts of reckless aggravated assault, N.J.S.A. 2C:12-1(b)(3) (lesser-included offenses of counts three and four), second-degree possession of a weapon for an unlawful purpose (count five), second-degree unlawful possession of a weapon without a permit (count six), second-degree bribery of a witness (count seven); and first-degree witness tampering (count eight). Defendant received an aggregate sentence of forty years.

III.

On appeal, defendant raises the following arguments:

I.   THE COURT ERRED IN DENYING THE DEFENDANT[']S MOTION TO SEVER THE CHARGE OF WITNESS TAMPERING BECAUSE THE DEFENDANT WAS OVERLY PREJUDICED.

II.  THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.  (Not raised below).

III. THE LOWER COURT ERRED WHEN ALLOWING THE CHARGE OF FLIGHT TO BE INCLUDED IN JURY INSTRUCTIONS.

We find these arguments unavailing.

Regarding defendant's Point I, our Rules provide that "[t]wo or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or a similar character[.]" R. 3:7-6.  The court may, however, "order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief" where "it appears that a defendant . . . is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment[.]" R. 3:15-2(b).  The decision to grant or deny a motion to sever is within the trial court's sound discretion. State v. Morton, 155 N.J. 383, 452 (1998).  We must "defer to the trial court's decision, absent an abuse of discretion." State v. Chenique-Puey, 145 N.J. 334, 341 (1996).

A mere claim of prejudice is insufficient to support a motion to sever. State v. Moore, 113 N.J. 239, 274 (1988). Also, a defendant is not entitled to severance simply because he or she believes a separate trial "would offer . . . a better chance of acquittal." State v. Johnson, 274 N.J. Super. 137, 151 (App. Div. 1994) (quoting State v. Morales, 138 N.J. Super. 225, 231 (App. Div. 1975)).

"The test is whether the evidence from one offense would have been admissible N.J.R.E. 404(b) evidence in the trial of the other offense, because '[i]f the evidence would be admissible at both trials, then . . . a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" State v. Sterling, 215 N.J. 65, 98 (2013) (quoting Chenique-Puey, 145 N.J. at 341).

N.J.R.E. 404(b) bars the admission of other-crimes evidence "to prove a person's disposition in order to show that . . . the person acted in conformity with such disposition." Other-crimes evidence is, however, admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." Ibid. "[S]ensitive admissibility rulings regarding other-crimes evidence made pursuant to Rule 404(b) are reversed

'[o]nly where there is a clear error of judgment." State v. Green, 236 N.J. 71, 81 (2018) (quoting State v. Rose, 206 N.J. 141, 157-58 (2011)).

The party seeking to introduce other-crimes evidence must satisfy the four prongs enunciated in State v. Cofield. 127 N.J. 328, 338 (1992). Under Cofield,

> 1. [t]he evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. [i]t must be similar in kind and reasonably close in time to the offense charged;
>
> 3. [t]he evidence of the other crime must be clear and convincing; and
>
> 4. [t]he probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Ibid.]

Regarding the first Cofield prong, all relevant evidence is admissible unless excluded by other rules. State v. Scharf, 225 N.J. 547, 569 (2016) (citing N.J.R.E. 402). The threshold is met "[o]nce a logical relevancy can be found to bridge the evidence offered and a consequential issue in the case." State v. Cole, 229 N.J. 430, 448 (2017) (quoting State v. Burr, 195 N.J. 119, 127 (2008)).

The Supreme Court has recognized the relevance of post-crime conduct where it demonstrates consciousness of guilt. State v. Williams, 190 N.J. 114, 125-26 (2007). Post-crime consciousness of guilt supports "a logical connection

13

to a desired inference about mental state in specific and non-specific intent crimes." Id. at 128. Here, because the other-crimes evidence was relevant to prove defendant's consciousness of guilt, we are persuaded the judge properly found the State satisfied the first Cofield prong.

Application of the second Cofield prong is confined to cases that are similar to the facts outlined in Cofield. See Williams, 190 N.J. at 131. Accordingly, we see no need to discuss this prong further, except to note defendant's threats to Bowen while incarcerated, and the phone calls he placed to his girlfriend and Ramirez about Bowen, were reasonably close in time to when defendant was indicted, and were related to his prosecution for the charged offenses. See State v. Goodman, 415 N.J. Super. 210, 233 (App. Div. 2010) (finding the second Cofield prong to be satisfied where the other-crimes evidence was "contemporaneous and directly related to [the defendant's] prosecution[.]")

As to the third Cofield prong, we are persuaded the judge correctly found the other-crimes evidence was clear and convincing. Not only did the State produce recordings of defendant's phone calls to his girlfriend and Ramirez, but Bowen's statement that he and defendant were incarcerated together in July 2018

when defendant threatened Bowen was borne out by the jail logs the State possessed.

As to the fourth Cofield prong, we disagree with defendant's contention that the probative value of the other-crimes evidence was outweighed by its prejudice to defendant. Here, the judge correctly decided that the phone calls defendant made from the jail to Ramirez and his girlfriend would come in only so "long as they are sanitized." She also stated she would, and did, provide a limiting instruction to jurors so that they did not "consider the fact that the defendant was in jail when the statement [to Bowen] was made" during the July 2018 confrontation. Indeed, during the trial, the judge told the jurors:

> [Y]ou have heard some testimony and you're going to hear testimony from the time during which defendant, Matthew Gonzalez, was incarcerated. The fact that Mr. Gonzalez was incarcerated at any time should not enter into your discussions or your deliberations in any manner, as any incarceration is not evidence of guilt, and you, the jury, decide whether the State has proven the defendant's guilt of the charges beyond a reasonable doubt.

The judge issued a similar instruction in her final charge. It is presumed that jurors followed these instructions. See State v. Burns, 192 N.J. 312, 335 (2007).

As our Supreme Court indicated in Rose, a reference to a defendant's prior incarceration may only be "prejudicial in the way that all highly probative

A-0991-20

evidence is prejudicial: because it tends to prove a material issue in dispute." 206 N.J. at 164. Here, given the care taken by the judge to minimize prejudice to defendant while admitting the other-crimes evidence, we are satisfied any limited reference to his incarceration was not unduly prejudicial such that it caused jurors to convict defendant on improper grounds. In fact, the jury chose not to convict defendant on his most severe charges — murder and two counts of aggravated assault — opting instead to find him guilty of aggravated manslaughter and reckless aggravated assault. Accordingly, considering the State satisfied each Cofield prong, the judge did not abuse her discretion in denying defendant's severance motion.

Turning to Point II, we decline to overturn defendant's conviction on the grounds the jury's verdict was against the weight of the evidence. "In . . . criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." R. 2:10-1. Also, a jury verdict should stand if, "based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." State v. Williams, 218 N.J. 576, 594 (2014). Further, a verdict should

A-0991-20

not be set aside unless it is clearly and convincingly shown there was a miscarriage of justice. State v. Johnson, 203 N.J. Super. 127, 134 (App. Div. 1985). Where a jury's verdict rests upon the assessment of witness credibility, we "may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced." State v. Smith, 262 N.J. Super. 487, 512 (App. Div. 1993) (citing State v. Haines, 20 N.J. 438, 446-47 (1956)).

Here, defendant concedes he did not move for a new trial. Hence, his claim is not cognizable on appeal. R. 2:10-1. Even if it were, the claim would have no merit, despite defendant's contention the State's witnesses provided "several conflicting statements" from the day of the shooting to when they testified at trial. For example, defendant argues Bowen "changed his story on every occasion where it was beneficial for him to do so." But the defense had the opportunity to cross-examine Bowen and other witnesses about any inconsistencies in their statements. Also, the State presented significant evidence showing Bowen changed his story in response to defendant's threats. Additionally, the State produced proofs to corroborate the testimony of its witnesses, such as surveillance video from the day of the shooting and texts extracted from cell phones. Thus, we perceive no reason to disturb the jury's verdict.

A-0991-20

Regarding Point III, defendant contends the judge should not have included a flight instruction in her charges. Again, we disagree.

"[A]ppropriate and proper [jury] charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Ibid. (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

We apply a harmless error analysis where a defendant objects to a charge. Ibid.; see also R. 2:10-2. "Under that standard, there must 'be some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" Ibid. (alterations in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

It is well established that flight is "a type of post-crime conduct that can demonstrate consciousness of guilt." Williams, 190 N.J. at 125. Therefore,

"evidence of flight occurring after the commission of an offense has been held probative of guilt and admissible." Id. at 125-26. To be admissible, evidence of flight must be "intrinsically indicative of a consciousness of guilt[,]" but need not "unequivocally support a reasonable inference" of the defendant's guilt. State v. Randolph, 228 N.J. 566, 595 (2017) (quoting State v. Randolph, 441 N.J. Super. 533, 562-63 (App. Div. 2015)).

A jury instruction on flight is appropriate where a jury could find there was a departure by the defendant and the motive for the departure was "an attempt to avoid arrest or prosecution." State v. Mann, 132 N.J. 410, 421 (1993). Here, the judge concluded it was fitting to instruct the jury on flight because there was a "multitude of indications that the defendant was fearing an accusation and trying to stay away from the police and evading." She highlighted that after the shooting, defendant changed his appearance by shaving his beard, and he explained to his girlfriend that he did so because "cops [were] on [him]" and he "[g]ot to look different." Further, the judge noted "[t]he changing of [defendant's] phone numbers" and that he fled from the scene after the shooting. Although defendant argues, as he did before the trial court, that he did not evade police, as evidenced by the fact he "did not use a false name" when he was hospitalized in October 2017, and the "police were aware of his

presence in the hospital[,]" the record reflects defendant changed his appearance in the months following his hospital stay, after admitting to Bowen he shot someone. Therefore, we are not convinced the judge erred in providing the jury with a flight instruction.

In sum, we are not persuaded the judge improperly denied defendant's severance motion or that she mistakenly provided the jury with a flight instruction. Additionally, we decline to conclude the jury's verdict was against the weight of the evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0991-20